NEY v. THE DUBUQUE AND SIOUX CITY RAILROAD COMPANY.

1. **Railroads:** SUB-CONTRACTORS. A sum due to a sub-contractor for labor performed in the construction of a railroad becomes the debt of the company, when judgment is rendered against the company upon its drafts drawn in payment for such labor, upon and accepted by its treasurer; and in determining the rights of such a creditor under a decree providing for the payment of all debts for the construction of a certain part of the road, it is immaterial whether the basis of the judgment was a contract between the company and the original contractor, or with the plaintiff.

2. —— EMPLOYES. In connection with railroads the term *employé* applies to conductors, agents, superintendents and others engaged in operating the road and the like, and not to contractors and persons engaged in constructing the road bed and in laying down the ties and rails.

3. **Evidence:** DECREE. Parol evidence is inadmissible to vary or alter the language of a decree which is plain and unambiguous.

*Appeal from Jones District Court.*

THURSDAY, JUNE 7.

AT the February Term, 1860, plaintiff recovered judgment against the Dubuque and Pacific Railroad Company, for over $3,600. Mason, Bishop & Co. had a contract with the company, made in October, 1856, for the construction of the road from the east line of Delaware county to a point within one mile of Cedar Falls, in Black Hawk county. Plaintiff was a sub-contractor, and from September, 1857, to July, 1858, did certain work on sections sixty-three and sixty-four of the line (being sixty-three or sixty-four miles west of Dubuque) for which, in August, 1858, he obtained certain drafts of the company, accepted by its treasurer, and upon them recovered the judgment aforesaid. These drafts were charged to Mason & Co. as so much paid on their contract. Part of plaintiff's work was performed under a promise from the company that they would pay him therefor, Mason & Co.

having notified him that he might quit, as the railroad company had failed to meet the monthly estimates. What part was performed before, and what after this, does not appear, nor is it material.

In July, 1859, the contract with Mason & Co. was canceled, and the account closed the next month. Soon thereafter a contract was made with O. P. Root, for the grading, bridging, &c., of *fifty miles of said road*, being from the forty-first to the eightieth mile inclusive.

In March, 1857, the company made a mortgage upon its roadway, stations, &c., to secure the payment of certain construction bonds, and in August, 1860, proceedings were commenced to foreclose the same, and a decree entered containing the following among other provisions: The trustees, in conjunction with the company, were to convey the road, its franchises, depot, grounds, &c., to the Dubuque and Sioux City Railroad Company (the present defendant), it being expressly understood and agreed that the new company was formed for the benefit of all concerned in the old, whether as stockholders, bondholders or creditors.

The payment of the indebtedness of the old company was provided for as follows:

"The bonded indebtedness of the Dubuque and Pacific Railroad Company shall be exchanged, dollar for dollar, with accumulated interest to the date of this decree, for preferred stock of the Dubuque and Sioux City Railroad Company."

The stockholders of the Dubuque and Pacific Railroad Company shall receive in exchange for their stock therein, including dividend interest to 1st June, 1860, on the surrender of the same, common stock in the Dubuque and Sioux City Railroad Company to an equal amount respectively.

The creditors of the Dubuque and Pacific Railroad Company, who hold securities for the amounts owing

them by the company, shall have and receive in exchange for such securities, and in satisfaction of the debts, preferred stock in the Dubuque and Sioux City Railroad Company.

The unsecured creditors of the Dubuque and Pacific Railroad Company shall be entitled to receive in ful. satisfaction of their claims and demands against the company, common stock of the Dubuque and Sioux City Railroad Company, to an amount equal to what may be justly owing them respectively.

The indebtedness of the Dubuque and Pacific Railroad Company, for right of way, for construction of the second forty miles of road, for operating expenses, and what may remain due on back pay rolls and to officers and employés of the company, and for the trust expenses and on moneys advanced to pay taxes, shall be settled and paid for by the Dubuque and Sioux City Railroad Company; and the officers of said last company are authorized to pay the same in cash or in preferred stock of said company."

And it was also ordered, that the decree should not absolutely bar or cut off any of the said indebtedness; but that the holders thereof should be entitled to have and receive of the Dubuque and Sioux City Railroad Company payment of the same in common stock, preferred stock or otherwise, according to the nature of their respective claims, * * * and that only such as should consent to come in under the provisions of the decree were to be entitled to receive stock in the new company, for any claim or demand against the old. The petition for the foreclosure set forth that the old company was greatly embarrassed, and there was of record, judgments against it to the amount of over $55,000, giving the names of each judgment creditor, including that of the present plaintiff. He was not, however, made a party, nor did he make any appearance to said action.

Plaintiff alleging that the drafts upon which he recovered his judgment were given for work done and performed on

" *the second forty miles of road;*" that he has demanded of the new organization preferred, stock as provided in the decree, asks judgment for the amount of his former recovery and for general relief.

Defendants in their answer, rely for the most part upon the alleged fact that the plaintiff's work was not performed *on the second forty miles of road;* and that the provisions of the decree for the payment of such indebtedness have reference to the work done under the Root contract; that such was the intention of all the parties, and that it was never contemplated that any portion of the indebtedness arising under the Mason & Co. contract should be paid in preferred, or otherwise than in common stock. As to the meaning of this language, much parol and other testimony was introduced against plaintiff's objection.

The cause was referred; the referee reported against the prayer of the petition; the report was set aside in the District Court; judgment granting the relief asked, and defendant appeals.

*James M. McKinlay* for the appellant.

*Monroe & Deery* for the appellee, cited 1 Greenl. Ev., § 499; Chit. Cont., 74, and note on page 81; *Myers* v. *Sunderland,* 4 G. Greene, 567; *Sands* v. *Woods,* 1 Iowa, 263; *Haskins* v. *Edwards & Turner,* Id., 426; *Walker & Bros.* v. *Manning,* 6 Id., 519; Smith's Lead. Cas., 681; Story Cont., 668; 2 Pars. Cont., 60; *Field* v. *Schricker,* 14 Iowa, 122; *Pilmer* v. *The Branch of the State Bank, &c.,* 16 Id., 321; *De Louis* v. *Meek,* 2 G. Greene, 55; *Lorton* v. *Agnew,* Morris, 267; *Cooley* v. *Smith,* 17 Iowa, 101.

WRIGHT, J. — Whether the indebtedness forming the basis of plaintiff's judgment against the old company,

1. RAIL- ROAD: sub- contractor.
arose under a contract between the company and Mason & Co., or the company and plain-

tiffs directly, would not, in our opinion, make any difference.

Assuming the construction work was performed by him as a sub-contractor, the railroad company recognized its liability to him, and undertook to pay the same in the manner and form specified in the drafts, upon which he recovered judgment. The judgment settled the question of the old company's liability to the plaintiff for this debt; and whether it was originally liable to Mason & Co. or to plaintiffs, is entirely immaterial. The language of the decree is not that *certain contractors*, or certain persons are to be paid as therein contemplated, but "that the *indebtedness* * * * * for the construction of the second forty miles of the road," shall be paid and settled either in cash or preferred stock. And though there had been no judgment, and the drafts had been issued to Mason & Co., · if held by plaintiff, he would be entitled to the relief asked, provided the indebtedness arose in the manner contemplated by the decree. Therefore the settlement with Mason & Co., and the cancellation of the contract in July, 1859, could not affect plaintiff's right; for there is no pretense that this indebtedness was paid, or otherwise regarded than as so much adjusted with a sub-contractor, the same being passed to the credit of the railroad company in said settlement. The indebtedness remained in full force, and this settlement did not operate to discharge it. Whether in its original form or merged in the judgment, if an indebtedness within the meaning of the decree, the new company would be liable, and liable to the holder of the same. And if Mason & Co., as original contractors, might maintain this action so may plaintiff.

Plaintiff claims that he was an "employé," and therefore entitled under the decree, to cash or preferred stock.

2. —— employes. This is not our understanding of the language used in the clause upon which he relies. The

language is, that the indebtedness for * * * operating expenses and what may remain due on back pay rolls *and to officers and employés of the company,* * * * shall be paid, &c." This refers to conductors, agents, superintendents, those engaged in operating the road and the like, and not to contractors, or persons building or constructing the road bed or laying down the ties and rails. In connection with a railroad, the term "employé" has a meaning too well settled to extend it to plaintiff or any one similarly situated.

But the cardinal inquiry is, whether plaintiff's indebtedness was for the construction of any part of the *second forty miles of the road.* It is admitted that it was performed on sections within the second forty miles west from Dubuque, and within that part embraced in the O. P. Root contract. But the claim is that all indebtedness to contractors prior to the Root contract had been adjusted; that the trustees felt, as their names were to the last contract, bound to see any indebtedness thereunder paid, and that it was this indebtedness which was meant by the decree. Much testimony was offered to show that it was the indebtedness under this contract that was meant by the words: "for the construction of the second forty miles of road," and tending to show that the parties to the decree so understood it. And defendant also claims that this being shown, plaintiff stands as an unsecured creditor and only entitled, therefore, to common stock. And it is also insisted that as plaintiff was not a party to the decree, and parted with no right in consequence thereof, he cannot object to testimony showing the true meaning and intention of the language used. We cannot resist the conclusion, however, that to allow this would plainly violate a cardinal and well settled rule of evidence.

The language "for construction of the second forty miles of road" is plain, unambiguous and needs no explanation. It is agreed on all hands, that the road was divided

*3. EVIDENCE: decree.*

into mile sections and numbered from one upwards, in consecutive order, commencing at Dubuque, the eastern terminus, and extending westward. Starting thus, it is well settled that this work was done on "the second forty miles," or on sections sixty-three and sixty-four. What uncertainty, what ambiguity, then, remains? Upon what rule is it that parol testimony can be received to show that this language meant something different from what it plainly imports? The decree, it must be remembered, speaks the intention of the court, or is the judgment of the law upon the facts, rather than the language of the parties. There was nothing said, nothing determined about the O. P. Root contract, or any rights thereunder, in this decree or proceeding, nor specially as to any other contractor. The court determined that the new company should pay the creditors in a particular manner. And we are not at liberty to adopt a construction which shall do violence to the language employed or the rules of law. "Words must not be forced away from their proper signification to one entirely different, although it might be obvious that the words used, either through ignorance or inadvertence, expressed a very different meaning from that intended. The rule is not that the court will always construe a contract to mean that which the parties to it meant; but rather that the court will give it that construction which will bring it as near to the actual meaning of the parties as the words they saw fit to employ, when properly construed, and the rules of law will permit. *Field* v. *Schricker*, 14 Iowa, 119, and cases cited; 1 Greenl., 277, note 1.

Again, it must be remembered that this proof was offered to establish the existence of the record and its tenor, as well as plaintiff's right thereunder. As such it is the only proper legal evidence of itself, and is conclusive of the fact of its rendition, and of all the legal consequences

resulting from that fact, whoever may be the parties to the suit in which it is offered. 1 Greenl., 538. And, therefore, while the record might not be receivable to establish the fact against defendant, that plaintiff was a creditor, notwithstanding he is admitted to be such in the petition for foreclosure, it must be received as conclusive evidence of his rights, when shown to be such creditor. We mean by this, conclusive as against defendant, if plaintiff claims under the decree.

Not only so, but it must not be forgotten that the rule under consideration was intended primarily to exclude parol evidence of *the language of the parties*, tending to contradict, vary or add to that which the writing itself contains. And this, because, in the case of ordinary contracts, they have themselves committed to writing all by them deemed necessary or essential to give full expression to their meaning, and because of the mischief which would result, if verbal testimony were in such cases received. 1 Greenl., § 282; *Weston* v. *Eames*, 1 Taunt., 115; *Barrett* v. *The Union Mutual Fire Insurance Company*, 7 Cush., 175; *Sayward* v. *Stevens*, 3 Gray, 97; *Trustees of Church in Hauson* v. *Stetson*, 5 Pick., 506; *Crawford* v. *Spencer*, 8 Cush., 418; *Taylor* v. *Sayre*, 4 Zabr., 647; *Hamble* v. *Hunter*, 12 Ad. & El. (N. S.), 310. And see *Lorton* v. *Earl of Kingston*, 5 Clark & Fin., 269; *Whittaker* v. *Johnson County*, 12 Iowa, 595, and cases there cited.

The case before us does not involve the question whether the decree is not inconclusive because plaintiff was not a party to it. For it is admitted, that plaintiff is in some form entitled to its benefits, either as a common unsecured creditor, and hence entitled to common stock, or as a contractor on the second forty miles, and hence to receive cash or preferred stock. And the object of the proposed proof was to vary or add to the language of the decree. In other words, to show that the court in the use of plain, unambigu-

ous terms, meant something or other and different by proving what the parties had in their minds at the time the decree was entered. It seems to us if this is allowed, that they might prove that this very indebtedness, though indisputably within the Root contract, was to be paid in common stock; or that this plaintiff was intended to be excluded from all benefits of the decree; or that the secured creditors were to be paid otherwise than as therein provided; or anything else plainly and clearly contradicting the judgment of the court. And yet to allow this would certainly violate the rule which excludes such parol proof. A rule intended and calculated to prevent mischief; a rule which experience has shown to be just and necessary, and sustained by such considerations as well as by the further one that in all written contracts the parties are presumed to have incorporated therein all by them deemed essential to give full expression to their meaning. And these reasons and the rule resulting therefrom, apply with all their force, when it is proposed to make a solemn judicial record speak a different language, by proof of what the parties secretly intended.

Affirmed.