DEPPE v. THE CHICAGO, R. I. & P. R. Co.

1. **Railroad**: NEGLIGENCE OF CO-EMPLOYEES: ACT OF 1862. The act of 1862 provides that "every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of its agents or by any mismanagement of its engineer or other employees of the company." *Held*, while the statute should be limited to employees engaged in the hazardous business of operating the road, that it would, nevertheless, include an employee engaged in connection with a dirt train, and who was injured while loading a car, by the falling of an impending bank.

2. —— *Semble*, that if he had been employed exclusively for shoveling or loading dirt, he could not recover, although he rode to and from his work on the cars.

3. **Instructions**: MISLEADING ONES. An instruction wholly inapplicable to the facts and issues will be regarded as misleading and prejudicial.

4. **Railroad**: NEGLIGENCE. In an action by an employee against a railroad company of the character above mentioned, the question for the jury is not whether the bank was *actually* safe, or whether the efforts of the company were in fact sufficient to ascertain its condition, but whether a person in the exercise of ordinary care would have done differently or have known of the unsafety in advance.

5. —— The company does not warrant the safety of the employee, but simply guarrantees the exercise of *ordinary* care by its employees; and if the course adopted was such as an ordinary prudent man might have adopted, the plaintiff cannot recover.

*Appeal from Scott District Court.*

THURSDAY, JANUARY 24.

ACTION to recover damages for injuries the plaintiff alleges he suffered by reason of the negligence of the defendant's employees, while he was in the employ of the defendant and engaged "as a laborer, loading and unloading a mud train and doing work connected therewith." The defendant denies its negligence and avers negligence on the part of plaintiff. There was a trial to a jury. The testimony of the plaintiff, which is in substantial accord with the other testi-

mony in the case, is to this effect : On the 19th day of May, 1871, I was working for the defendant about a mile and a half east of Kellogg, shoveling dirt on the mud cars. I had been at work there about six weeks. The train consisted of twelve or thirteen cars, and the dirt was used in filling at the bridge west of Kellogg, about two and a half miles from the bank where we got it. Sometimes I went with the train to unload and sometimes remained at the bank to undermine with a pick-axe. I had been with the train to unload during the forenoon of the day I was injured ; the bank where I was shoveling was about twenty feet high above the rock I stood on to shovel from ; it was nearly straight up, but slanted back a little, until near the top where it projected over a foot or two for a distance of about ten feet along the bank ; nobody could say that any thing would come down ; I had no fear of danger in working there, for nobody could see that. In the morning and at about eight o'clock some men went on the top of the bank with crow-bars to break it down ; they got some down, but could not break down any more ; I was not on the bank that day and did not know any thing of the condition of the dirt there ; I saw the men on the top of the bank and spoke to them ; and they told me that they could not get any more down ; they were at work at the place where the dirt afterward fell on me ; after we left for dinner I did not see the main boss ; there was another man who acted as boss when he was away ; after dinner this man told everybody to go to his car to work ; I went to my car and while shoveling up loose dirt and between one and two o'clock the bank, which was strong ground with black clay, came down all at once upon me, broke my leg and bruised me so that blood issued from my extremities. I did not know that any thing was loose, and nobody could have seen that any thing was loose, nor did anybody call out to me till I was nearly covered ; I was taken out directly, and the main boss came up just as I was put on a car to be taken to the house ; I was confined to my bed about six weeks ; was very sick ; my broken leg is shorter than the other, and I will be a cripple for life ; I did not say any thing

to the boss or any other person about that being a bad place to work, and he did not say any thing to me about it.

One of the other witnesses testifies to the fact that about eight days before the injury to plaintiff, efforts had been made to break down the bank by blasting with powder; that he was one who was on top of the bank that day and they punched crow-bars down and pried in trying to break down the bank, and that he saw a little crack in the ground. The defendant's witnesses modified these statements somewhat. After the testimony was closed the court instructed the jury, who, upon considering the case, returned a verdict for plaintiff for $7,000. Judgment was rendered upon the verdict, and the defendant appeals.

*Cook, Richman & Bruning* for the appellant.

*Bills & Block* for the appellee.

COLE, J. — I. This plaintiff was an employee of the defendant. He claims that the injury he has suffered was the result of the negligence of another employee of the defendant. Under the common-law rule an employee could not recover of his employer for damages resulting to him by reason of the negligence of his co-employee. *Sullivan* v. *The M. & M. R. Co.*, 11 Iowa, 421. But our legislature has enacted that "every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employee of the corporation to any person sustaining such damage." Sec. 7, chap. 169, Laws 1862. This changed the common-law rule. And it has been held that this act is not in conflict with art. 3, sec. 30, of our Constitution, which requires that " all laws shall be general and of uniform operation throughout the State." *McAunich* v. *The M. & M. R. Co.*, 20 Iowa, 338.

The defendant asked the court to instruct the jury that this plaintiff, in view of his employment (shoveling dirt at a bank)

at the time of his injury, was not within the purpose and meaning of the act, and hence they should find for the defendant. This was refused, and thereon arises the first assigned error. It was said in the case of *McAunich* v. *The M. & M. R. Co.*, *supra*, which was an action by the administratrix of a brakeman, "if there is an employer and an employee, but no business of a railroad company to be engaged in, then the case is not within the act. But the same liability is extended by the act upon the same terms to all in the same situation." And in another case, decided on the same day (*Ney* v. *The D. & S. C. R. Co.*, 20 Iowa, 347), it was held that " in connection with railroads the term *employee* applies to conductors, agents, superintendents and others engaged in operating the road and the like, and not to contractors or persons building or constructing the road-bed or laying down the ties and rails." It was under this construction of the language of the statute that it was held constitutional, as before explained.

But if the statute should be so construed as to apply to all persons in the employ of railroad corporations without regard to the business they were employed in, then it would be a clear case of *class legislation*, and would not apply upon the same terms to all in the same situation, and hence would be unconstitutional, and manifestly so. To illustrate, suppose a railroad company employ several persons to cut the timber on its right of way where it is about to extend its road, and the land owner employs a like number of persons to cut the timber on a strip of equal length alongside such right of way. · If one of each set of employees shall be injured by the negligence of a co-employee, and the employee of the railroad company can, under the statute, maintain an action against his employer and the other cannot, then it is clear that the law does not apply upon the same terms to all in the same situation. The law, then, would not have uniform operation, but would be violative of the Constitution just as much as a law that should prescribe under the same circumstances different liabilities for merchants, for mechanics, and for laborers. The manifest purpose of the statute was to give its benefits to employees en-

gaged in the hazardous business of operating railroads. When thus limited it is constitutional; when extended further it becomes unconstitutional. Hence the question is not, as erroneously supposed by the appellee's counsel, whether this plaintiff was with the boss a co-employee of the railroad company, but is whether he was engaged in the business, to which the statute must be limited. See, however, a recent Pennsylvania case, where a *draughtsman* in a locomotive works was held not to be a co-employee of laborers about the building. (Legal Opinion.) We have thus stated our views at some length to avoid misconstruction. For we hold that the court ruled correctly in refusing the instruction asked, and this because the employment of the plaintiff was connected with the operation of a railway train. It is true he was not injured while or by operating the train, but neither the act itself nor the constitutional limitation requires us to put this very narrow construction upon it. The plaintiff was employed for the discharge of a duty which exposed him to the perils and hazards of the business of railroads; and although the injuries did not arise from such hazards, they cannot be separated from the employment. If the plaintiff had been employed exclusively for shoveling or loading the dirt, he could not recover, although he might have rode to and from his work on the cars. The ground we rest our affirmance upon is, that where the employment is entire and a part of the continuous services relates to the perilous business of railroading, it brings the case within the statute and its constitutional limit.

II. The instruction given by the court would cover about nine pages of our reports. Their great length precludes us from copying them herein or reviewing them in detail. As showing the justice of this criticism, we copy instruction, 1. " The general rule is that an employer is not liable to one in his employment for the negligence of a co-employee engaged in the same common employment unless the employer has been careless in selecting the employee in fault. In other words, or to state it more clearly, when a person has in his employment two or more persons engaged in the same general work, and

through the negligence of one of the persons or employees one of his co-laborers is injured, the master or employer is not liable, unless in the selection of the person through whose fault the injury happened, he has been negligent and careless. It follows, then, that where the master or employer requires persons to labor in the same general work with others in his employment, and the persons so taken have been engaged and put to work without inquiry into, or knowledge of, their fitness for such work, and an injury falls upon another engaged in the same general work through the negligence or unfitness of the person so employed, the employer is liable; for it was his duty in advance to make inquiry, or in some manner endeavor to inform himself of the fitness of his servants to do the work assigned to them with usual and ordinary care. It will thus be seen that under the old law the master was only liable for carelessness on the part of one of his employees, whereby another employee engaged in the same general employment was injured when the employer had been negligent in the selection of the servants in fault."

If this instruction is correct in its legal propositions, which we neither deny or determine, it was error to give it, because there is no issue to which it could be applied, nor even a single word in either the pleadings or the testimony respecting carelessness in the employment of servants. To instruct the jury upon that question, so entirely foreign to any matter before them, and at such length, could not be otherwise than misleading. And, as if to impress this instruction more directly upon the jury, the court begins the next instruction as follows: "2. But this limited liability on the part of employers seems to have been enlarged, so far as railroad companies are concerned by" our statute; thereby showing that the jury was to consider of this limited liability respecting negligence in the employment of its employees, as well as of the enlarged liability under the statute.

III. The second instruction is erroneous in that it directs the jury that if the holes were made in the bank by efforts to break it down, which failed, and thereby the bank was made

unsafe, and the same was unknown to the plaintiff, it was negligence in the defendant rendering it liable, whereas the question for the jury was not whether the bank was *actually* unsafe, which fact was demonstrated by the result, but whether a person in the exercise of ordinary care would have done differently or have known of the unsafety in advance. In other words, the facts specified do not constitute negligence as a matter of law.

4. RAILROAD: negligence.

IV. The third instruction is liable to the same objection as the second, and since it is much shorter than the second, we copy the first sentence of it, being nearly one-half: " 3. If, then, you find that plaintiff sustained injuries in consequence of holes having been drilled in the surface at the top of the bank, and efforts had been made to pry or force off the earth between the holes and the outer edge of the bank, and the adhesive force that held the earth in place and gave support to it had thereby become weakened to such a degree that it subsequently fell upon and injured plaintiff, and that at the time the earth so fell plaintiff was in the employment of defendant, and engaged in work by the order of its agents having charge of such work, and that he had no knowledge or warning of its condition, and that its appearance from the place where he was required to and was at work gave no indication of danger, and the work which plaintiff was required to do and did do, still further helped to weaken the support of the mass of earth above, this would be a want of ordinary care on the part of defendant's agents, and for which it would be liable." * * * The employer does not warrant the safety of the employee. Under our statute the railroad company is made to simply guaranty the exercise of ordinary care by its employees. The question is not whether the adhesive force was weakened, so that the bank fell and injured the plaintiff, nor would such necessarily constitute in law want of ordinary care, but whether a person of ordinary care would have used the same or like means to break down the bank, and after having done so would have continued to require an employee to work under it; and further, even if an ordinary prudent man would not have done

so, did the plaintiff use ordinary care, with the knowledge he had, to avoid injury from the bank when it fell. These are the vital questions in the case, and the instruction ignores them and makes the liability of defendant depend entirely upon results, which do not, as a matter of law, constitute want of ordinary care; whereas the defendant is not liable for actual results, but only for the want of ordinary care. In other words, the instruction holds that the acts done were evidence of negligence as a matter of law; this is not so, for the course adopted may have been the only practicable one, or the very course an ordinarily prudent man might have adopted. And if so, the defendant is not liable. The question for the jury to determine is, whether as a matter of fact such acts did constitute negligence. The last part of the instruction is still more objectionable than the first.

V. The last part of the fourth instruction has no sufficient warrant in the evidence. Besides, it lays down the rule that where a fact upon which a peril to an employee depends is concealed or difficult to discover, such concealment or difficulty casts the obligation of greater diligence upon the employer to discover it. This can only be true when the employer has, or by ordinary care might have, knowledge or notice of such or some hidden defect.

VI. The fifth instruction is erroneous; it is respecting objections by the employee to his superior about the work he is engaged in doing. There is not a particle of evidence whereon to base this part of the instruction. The plaintiff himself testifies that he "never said any thing to the boss or any other man about that being a bad place to work, nor did the boss say any thing to me about it."

VII. The sixth instruction is in regard to disobedience by the plaintiff of the orders of his physician, whereby his recovery was delayed. While this defense was set up in the answer, there was no testimony offered thereon by either party. It should not have been given.

VIII. The language of the seventh instruction was misleading, or might be under the circumstances of this case. It tells

the jury that " if you find for the plaintiff you will consider the pain and suffering he endured in consequence of the injuries of which he complains, and for these you can make a *liberal allowance.*" * * * There is no foundation laid or claim made for exemplary damages. The plaintiff is, in no event, entitled to more than actual compensation.

For the errors, as above specified, the judgment is

Reversed.