ANTON LARSON v. THE ILLINOIS CENTRAL RAILWAY COMPANY, Appellant.

Personal Injury on Hand Car: NEGLIGENCE OF COEMPLOYEE—WHAT IS "CONNECTED WITH OPERATION OF RAILWAY." A railway is liable for injuries sustained by a section hand while operating a hand car which collides with another through the negligence of the section foreman.   Code, 1307, construed.   *R'y Co. v. Artery*, 137 U. S. 507, 11 Sup. Ct. Rep. 129, followed.   *Stroble v. R'y Co.*, 70 Iowa 560, 31 N. W. Rep. 63, distinguished and restricted.

*Appeal from Webster District Court.*—HON. D. R. HINDMAN, Judge.

WEDNESDAY, MAY 16, 1894.

ACTION to recover for personal injuries sustained by the plaintiff through the negligence of a coemployee while in the employ of defendant as a section

hand, and while propelling a hand car on its track. The defendant demurred to the petition on the ground that the wrong complained of was not in any manner connected with the use and operation of its railway. The demurrer was overruled, and, the defendant electing to stand on the demurrer, judgment was entered in favor of the plaintiff for one hundred and fifty dollars, it having been stipulated that, if plaintiff recovered, it should be in that amount. Defendant appeals, and assigns as error the overruling of the demurrer.—*Affirmed.*

*John F. Duncombe* for appellant.

*Botsford, Healy & Healy* for appellee.

GIVEN, J.—I. The single question raised by the demurrer is whether the wrong complained of was, as stated in the petition, in any manner connected with the use and operation of defendant's railway, as contemplated in section 1307 of the Code. The petition shows that plaintiff was in the employ of defendant as a section hand, and, with others, composed a section gang that worked under the direction of a foreman, an employee of defendant, in keeping a certain section of defendant's road in repair; that in prosecuting their work they used a car propelled by hand along the track to carry the men and tools to and from work, and also a flat car or truck for carrying materials, which flat car was pushed along the track by hand or by the hand car. On the morning of June 9, 1892, at Manson, Iowa, the flat car was, by direction of the foreman, placed on the main track, and pushed some distance east, with the intention of pushing it in front of the hand car to the place where the gang was going to work. The hand car was put on the track some distance west of where the flat car stood, and plaintiff,

with others, was directed by the foreman to work the levers that propelled the hand car, plaintiff being in such position that his back was in the direction it was to be moved. The foreman stood upon it, facing in the direction they were to go, and under his direction it was put in motion; and, by reason of the neglect of the foreman to cause the speed to be slacked, or to give warning of the approach to the flat car, the hand car, when running at considerable speed, collided with the flat car with great force, throwing the plaintiff from the former car to the ground, whereby he was injured.

II.   Section 1307 of the Code, under which this action was brought, changed the rule of the common law so far as to make corporations operating railways liable to their employees for damages sustained in consequence of the neglect or mismanagement, and in consequence of the willful wrongs, of their agents, engineers, or other employees, "when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed." The controlling reason for this change in the law was, no doubt, that greater danger attended the handling of the machinery employed in the use and operation of railroads than attended the use and operation of other machinery. There is no question but that the plaintiff and the foreman were coemployees on and about defendant's railway, but it is contended that neither their employment nor the negligence of the foreman, as charged, was in any manner connected with the use and operation of defendant's railway. The question whether the employment and the wrongs in particular cases were within this statute has been before this court in a number of cases. This precise question was before the supreme court of the United States in the case of *Railway Co. v. Artery*, 137 U. S. Rep. 507, 11 Sup. Ct. Rep. 129,

upon facts similar to those alleged in plaintiff's peti-
tion.   In that case, plaintiff, Artery, a section
hand, was required by his foreman to sit upon
a moving hand car, with his feet hanging over,
and to hold a shovel so as to throw snow from one of
the rails.   When in this position, Artery's feet were
caught, and he was injured.   In that case it was con-
tended, as it is in this, that under the decisions of this
court upon said statute "only employees engaged in
operating and moving trains, and who are injured by
such trains, and employees who, while in the discharge
of their duty, are injured by trains used in operating
the railway, are within the statute."

After carefully reviewing the decisions of this
court, that court says: "We are clearly of the opinion
that in the present case the defendant was liable under
section 1307 of the Code.   *   *   *   The injury was
directly connected with the use and operation of the
railway.   *   *   *   The railway was being used and
operated in the movement of the hand car quite as
much as if the latter had been a train of cars drawn
by a locomotive.   *   *   *   This we understand to be
the manifest purport and effect of the decisions of the
supreme court of Iowa on the subject, as well as obvi-
ously the proper interpretation of the statute."   Ap-
pellant concedes that this case is against the construc-
tion claimed, but insists that it is grounded upon a
misapprehension of the decisions of this court, and
that this court has held that the use and operation of a
railway, as contemplated in said statute, are limi-
ted to the movements of trains.   Language was
used by this court in *Stroble v. R'y Co.*, 70 Iowa,
560, 31 N. W. Rep. 63, that seems to support appel-
lant's position.   In that case, the employment was
to elevate coal in a shed ready to be put upon the ten-
ders.   The wrong was in permitting the stairway in
the shed to become out of repair, in consequence of

which the plaintiff fell, and was injured. This court held that the case was not within the statute, and in commenting upon the words, "use and operation of a railway," says: "What is the use and operation of a railway? It is constructed for the sole purpose of the movement of trains. That is its sole use. What is the operation of a railway? They can be operated in no other way than by the movements of trains." An examination of the cases preceding that of Stroble will show that in none of them was it held that the use and operation of a railroad were limited to the movement of what are commonly known as "trains." The cases are all grounded upon the view that the statute applies when the employment and the wrong are connected with the handling of railroad machinery moved upon railroad tracks. A train, as usually understood, is composed of one or more engines, with one or more cars attached for the purpose of being moved to another place. A single engine is not a train, yet it is a common practice to run them alone, and often for long distances, at high speed. Surely it can not be said that such a movement of an engine is not a use and operation of the railroad, and that the employees running it are not within the statute. It is well known that at many places railroad shops and roundhouses are distant from stations where trains start and stop, and that lone engines are run to and fro as occasion requires. Certainly such a movement of engines is a use and operation of the railway, and yet they are not trains. In the recent case of *Butler v. R'y Co.*, 87 Iowa, 206, 54 N. W. Rep. 208, this court held that a clinker man, whose duty it was to draw the fires from engines, and to supply them with sand and water, and assist in moving tenders, was within the statute, because, in performing his duties, he had to go upon the engine to different points in the yard. An engine being thus used was in no sense a train, yet

it was clearly a use and operation of a railway, to the hazards of which the employee was exposed. A careful reading of *Stroble's case*, and especially in the light of the other decisions of this court, shows that it was not intended to hold that the use and operation of railways consist solely in the movements of trains, as that term is commonly understood.

III. This brings us to inquire whether the employment of plaintiff, and the use being made of the hand car, were "in any manner connected with the use and operation" of defendant's railway. The plaintiff was employed, and the car was being used, in repairing and keeping the railroad in order. The purpose was the same as in *Nelson v. R'y Co.*, 73 Iowa, 576, 35 N. W. Rep. 611. In that case the plaintiff was employed in operating a ditching machine, operated by the movement along the track of the train of which it formed a part. That was held to be a use and operation of the railroad, and within the statute. While the machinery was different, the purpose was the same as in this case, namely, the repair of the road. The *Case of Artery* is in harmony with the rulings of this court. It is true, as argued, that running hand cars is not attended with the same degree of danger that attends the running of engines and trains of cars; yet instances of serious accidents in that service are numerous. They are not so noticeable as other railroad accidents, because fewer persons are exposed, and the casualties are less. It is probable that, if the introduction of railroads had brought no greater perils than attend the movements of hand cars, the rule of the common law would not have been changed. It has been changed, and, we think, so as to include such a case as that stated in plaintiff's petition. There was no error in overruling defendant's demurrer, and the judgment is, therefore, AFFIRMED.