JOHN KEATLEY, Administrator, v. THE ILLINOIS CEN-
TRAL RAILWAY COMPANY, Appellant.

**Negligence of Fellow Servant:** RAILROADS. Decedent was a water
boy with a stone gang engaged in building a retaining wall along
the embankment adjacent to an unfinished bridge on which the
iron gang was working. The ties on this uncompleted bridge
had been shifted about on a given day. On that day, decedent,
while standing on a derrick platform used in building a side wall,
was killed by the wrecking of a train crossing said uncompleted
bridge. *Held*, deceased came within Code, 1307, permitting
recovery for the negligence of a fellow servant, where the wrong
is connected with "the use and operation of a railroad." It is
error to give a charge which could be understood to make it the
duty of the foreman of the "stone gang" to have flagged the said
wrecked train. Evidence as to the condition of the ties on the
day before the accident should not have been admitted. It was
competent to show how this bridge differed from a completed one.

**Practice:** STATING ISSUES. It is error, the issues being nowhere else
stated, to refer the jury to a complicated petition for the statement
of facts "upon which plaintiff must recover," if he is entitled to
recover at all.

*Appeal from Dubuque District Court.*—HON. J. J. NEY,
Judge.

WEDNESDAY, MAY 22, 1895.

The plaintiff is administrator of the estate of
Robert Keatley, deceased. This action was brought
to recover damages of the defendant for causing the
death of the deceased, which occurred by reason of a
railroad car on the defendant's road leaving the track,
and tipping over, and falling on him. There was a
trial by jury, which resulted in a verdict and judgment
for the plaintiff. Defendant appeals.—*Reversed.*

*W. J. Knight* and *Hubert O'Donnell* for appellant.

*J. H. Shields* for appellee.

Rothrock, J.—I.    The deceased was killed on the twenty-fourth day of October, 1890, at a bridge on the line of deffendant's road near the city of Dubuque.    It appears from the record that at that time the defendant was engaged in replacing a wooden bridge across a creek with an iron structure. The new bridge was about seventy feet long, was a single span, and each end rested on stone abutments. At the time of the accident there were two gangs of men at work on and near the bridge.    Each body of men was under a separate foreman.    One was known as the "stone gang."    The abutments of the bridge were fully completed, and the stone gang were not at work on the bridge proper.    They were engaged in building a retaining wall from the end of one of the abutments, to protect the embankment and trestle east of the bridge.    The other employes, known as the "iron gang," were employed in completing the superstructure of the bridge, and had so far progressed with the work that it was expected it would be finished the next day.    The bridge was on the main line of defendant's railroad from Dubuque to Sioux City, and during the time that this change was being made in the bridge the traffic over the road continued, the trains passing over the new structure before it was completed.    The stone gang used a derrick to raise the stone for the construction of the retaining wall.    This derrick was located between the retaining wall and the railroad track, and there is no claim that it was not properly placed to do the work at which they were employed.    The deceased was a boy, about fifteen years old, and was employed as

one of the stone gang. His services consisted of carrying and serving the men with drinking water, and in such other work as he was directed to do by the foreman. At the time of the accident he was on the platform where the derrick was located, at the east end of the bridge. A freight train approached from the west. There were twenty loaded cars in the train. The engine and ten cars passed safely over the bridge. The next two cars went off the track, but passed along over the ties beyond the east abutment, and fell over on the derrick platform, and killed the deceased. The superstructure or ironwork of the bridge was pushed east off the west abutment, and dropped into the stream below. Some of the cars went down with the bridge, and the rear end of the train remained standing on the west approach. These are the undisputed facts attending the death of the deceased. The right to recover damages is based on the alleged negligence of defendant's employes, and the negligence charged is set forth in the petition in these words: "That at the time the bridge was but partially completed; that the ends of the same were resting on abutments about seventy feet apart; that the bridge was not supported or held in place by guys, rods, or other supports; that the rails of the track crossing the same were not securely spiked to the ties, but were negligently and carelessly allowed to lie in a loose, unspiked, and insecure condition for the passage of trains thereon; that said bridge, in its unfinished and insecure condition, with the loose and unfastened rails thereon, was negligently and carelessly allowed to lie and remain in such dangerous and insecure condition; that while decedent was employed on and about the same, where his duty called him to be, and while said bridge and the ties and rails thereon were in said insecure and dangerous condition, a heavy freight train was negligently

and at a high and dangerous rate of speed run by appellant from the west, down a steep grade, around a curve, and on to said bridge; that the track, rails, and ties thereon were thereby spread and thrown apart, said train was derailed, and thrown with great force against and upon said bridge, and the same was thrown down; that decedent, while so employed on said bridge at the time of the destruction thereof, was thereby thrown under said bridge and train, from the effects of which he died, to the damage to his estate in the sum of ten thousand dollars; that said accident, injury, and death of decedent were caused by the grossly negligent, careless, and improper condition of said bridge, and the ties and rails thereof, so allowed to be by appellant, and the negligent and dangerous act of so running said train at a dangerous rate of speed over the same, and without fault or negligence on the part of decedent." There was a sharp conflict in the evidence as to the condition of the bridge at the time of the accident. Much of this evidence related to the spaces between the ties under the rails; the plaintiff's witnesses giving testimony tending to show that they were wide apart, and the testimony of the defendant's witnesses was to the effect that they were placed at proper distances. One of the plaintiff's witnesses was permitted to state, over the defendant's objection, what the position of the ties was the day before the accident. The objection to this evidence should have been sustained. The ruling of the court was erroneous. The inquiry should have been directed to the condition of the bridge at the time of the accident. There is no claim made by any witness that the condition was the same twenty-four hours before the accident that it was when the accident happened. The evidence is undisputed that the iron gang moved the ties back and forth during the day, to enable the men

to get down under the track to rivet the ironwork. While we hold that this evidence should not have been admitted, yet we doubt, if this were the only error in the record, whether the judgment should be reversed on this ground. We have said this much in reference thereto lest it might be thought that the ruling of the court was approved.

II.   Another witness was permitted to state, over the defendant's objection, the manner of the construction of the completed bridge. We do not think there was any error in this ruling. The bridge in question was in course of construction, and it was competent to show how far its construction had progressed by comparison with a complete bridge. It is true that the defendant had the right to construct the bridge, and the work could not be done *instanter*, nor in one day, and it was under no duty to any of its employes to cease traffic on its road while engaged in the work. But that was no reason why it was not allowable for a witness to describe to the jury what would be a completed bridge.

III.   The court, in the third paragraph of the charge, instructed the jury as follows: "Par. 3. The charge against the defendant, the Illinois Central Railroad Company, and the statement of alleged facts upon which the plaintiff claims a right to recover, will be found in his original petition, and the first amendment thereto, herewith submitted to you; and you will turn to these papers for the particular statement of fact upon which the plaintiff must recover, if he is entitled to recover at all, under the evidence and the instructions in this case; and I need not restate these allegations to you." The point is made that it was error for the court to refer the jury to the pleadings to determine the issues. We can discover no ground upon which this instruction can be sustained.

VOL. 94 Ia—44

If the other paragraphs of the charge had stated the issues, the direction to the jury to examine the petition and determine the issues would have been an error without prejudice. But there is no statement of the issues in any part of the charge, and the acts of negligence charged in the petition are such that no proper presentation of the case to the jury could have been made without a plain and clear statement of the issues. The case is peculiar in this respect. The negligence charged involves the employes operating the train, the iron gang, and the relation of the deceased to these two independent classes of employes; the deceased being a member of another force, called the "stone gang." That similar instructions have frequently been disapproved, and held to be erroneous and prejudicial, see *McKinney v. Hartman,* 4 Iowa, 154; *Beebe v. Stutsman,* 5 Iowa, 271; *Reid v. Mason,* 14 Iowa, 541; *Pharo v. Johnson,* 15 Iowa, 560; *Little v. McGuire,* 43 Iowa, 447; *Fitzgerald v. McCarty,* 55 Iowa, 702; *Porter v. Knight,* 63 Iowa, 365.

IV. We have set out the acts of negligence which the plaintiff asserted in his petition as grounds for recovery. The court charged the jury that the employes of the defendant might be held to be negligent for failing "to put out a flag or other sign to stop the approaching train." This was repeated in another part of the charge. These instructions were plainly outside of any issue, in the case. No such charge of negligence was made in the petition. In the thirteenth paragraph of the charge this language was used: "It was the duty of the person who was in charge of the men, including deceased, or the several persons having control of the different parts of the work of the rebuilding and repair of the bridge, to know the condition of the bridge, and its ability to support the approaching train, and to flag or give warning to the approaching

train in time to stop the same, and thus avoid a catastrophe." This part of the charge is not only wrong in holding the defendant to a negligent omission to flag the train, but it is misleading in failing to note the different employment of the two gangs of men at work at the bridge. The deceased was not in charge of the foreman engaged in building the superstructure of the bridge. He was in charge of the foreman of the stone gang, who had no connection whatever with the bridge proper. His work, so far as the safety of the bridge was concerned, was at an end. The building of the retaining wall had no connection whatever with the safety of the bridge for the passage of trains. Under this instruction the jury might well believe that it was the duty of the foreman of the stone gang to go on the bridge and examine it, and, if he found it unsafe, to flag the train.

V. Other errors are assigned and discussed in argument, one of which it is proper we should consider in view of a new trial. It is strenuously contended that the defendant is not liable, because the evidence shows that the employment of the deceased was not such as to authorize a recovery. It is provided by section 1307 of the Code that "every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employees of the corporation, and in consequence of the willful wrongs, whether of commission or omission, of such agent, engineers, or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." This law was originally enacted in the year 1862, and

the modification of the common law therein made, creating a liability for the negligence of coemployes or fellow servants, has been sustained, and the law applied, in many cases, on the ground that it is applicable to all of a certain class; that is, those engaged in employment which exposes them to the peculiar dangers and perils of the operation of a railroad. And it has not been limited to train crews only. It applies to section men, who have nothing to do with the movement of trains by which they are injured (*Fransden v. Railway Co.*, 36 Iowa, 372); a private detective, injured by a train while on the track in performance of his duty (*Pyne v. Railway Co.*, 54 Iowa, 223). In *Pierce v. Railway Co.*, 73 Iowa, 140, it was held that it was not material that plaintiff claiming to recover was not employed in the operation of the road, but that it is sufficient if it is shown that he was injured by the operation of the road, and by the negligence of the parties operating the train. In *Smith v. Railway Co.*, 78 Iowa, 584, the plaintiff was a snow shoveler, and when a train was standing still he slipped on some ice on the platform of a car, and fell through a bridge. The defendant was held liable, and the test of liability is stated as follows: "Does the duty of the employe require him to perform service which exposes him to the hazard peculiar to the business of using and operating a railroad?" And there are numerous cases which recognize the right of track men, having no connection with the operation of trains, to recover for injuries received while on or near the track by the negligence of the employes in operating trains. In all the cases referred to the right of recovery is not even questioned. We have said this much in this connection because there are expressions in some of the cases where injuries were received not by moving trains,

to the effect that the statute applies only to employes
engaged in the operative department. Applying the
facts attending the employment of the deceased to the
statute, we think that if he was not out of the line
of his duty in standing on the derrick platform, and if the
employes of the defendant negligently run the train
at a dangerous rate of speed upon an unfinished and
insecure and unsafe bridge, by reason of which the
cars left the track, and caused the death of the deceased,
he was within the statute, and a right of action accrued.
We will not discuss or pass upon the evidence. It is
proper to say, in conclusion, that care should be taken
in another trial to plainly direct the jury that the fore-
man of the stone gang is not chargeable with any neg-
ligence, if the evidence should be the same on another
trial as it was on the one from which this appeal was
taken. He had no more connection or responsibility
for the accident than if he and his gang had been build-
ing a right of way fence along the track. For the
errors above considered, the judgment of the district
court is *reversed*.