HANNA A. CANON, Administratrix of the Estate of JAMES L. CANON, Deceased, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

**Railroads:** FELLOW SERVANTS: *Construction of statutes.* A car inspector, required to go between and under cars, is exposed to hazards peculiar to the operation of a railroad, within the Code, section 1307, making railroad companies liable to their employes for the negligence of fellow servants; and recovery can be had for the death of an inspector killed by the negligent running of cars against the train under which he was working.

SAME. The applicability of Code, section 1307, to an employe, depends on the nature of the hazards to which he is actually exposed; not of those which may have been contemplated in his employment.

RULE APPLIED. A car inspector may recover for injuries from moving cars run upon him while inspecting, in violation of the yard foreman's promise to him, though it was in contemplation that his work should be done while cars were standing still.

CONTRIBUTORY NEGLIGENCE: *Jury question.* A car inspector, killed by the negligent running of cars against the train under which he was working, was not guilty of contributory negligence, as a matter of law, in not complying with the rule to put a red flag on the train, as a notice of his presence, where he had the express promise of the yard foreman, who controlled the movement of trains in the yard, that no cars should be sent back on that track.

*Appeal from Palo Alto District Court.*—HON. W. B. QUARTON, Judge.

SATURDAY, APRIL 10, 1897.

PLAINTIFF's intestate, when killed, was in the service of the defendant company at the city of Perry, Iowa, as a car inspector. At said city the defendant has located somewhat extensive yards, having numerous tracks, and it is also a freight division station. From the pleadings and evidence it appears that the duty of the deceased was, on the arrival of a train, to go along the side of the same, and to go under the cars, and in between the cars and examine and inspect the same, for the purpose of discovering defects in said cars, making a note in a book of defects discovered and marking cars which were found to be in bad order. Plaintiff was killed under the following circumstances: On January 19, 1895, while in the employ of the defendant company as such inspector, and after he had finished inspecting the first four cars at the west end of the train, the yard master, Applegate, who had charge of the making up of trains in said yards, came to him and told him he (the yard master) wanted the fourth car from the west end of the train. Canon told him he could have it; it was all right; and also told Applegate not to throw any cars in on his track; that he was not through "inspecting this side yet;" and Applegate answered him, "No, I won't Jim," or "Then I won't Jim." Thereupon Applegate uncoupled the said four cars, and they were pulled out, and some of them switched on to other side tracks. Afterwards the engine returned with two cars, and they were kicked back upon the track upon which the cars were standing which Canon was still inspecting, with such force as to move the whole

train, from twelve to sixteen feet. Canon, being between the cars, was killed.   The evidence showed that, when trains were to be inspected, it was the usual custom to uncouple the road engine from the train, and leave the train standing still until the inspection was completed; that it was not usual or the custom to move a train that was being inspected, or to run cars down the track upon or against such a train.   When the inspector was through, he would give a signal to the switchman which indicated that he had finished the work of inspecting the train.   It was not usual or customary to move a train that was being inspected, before this signal was given.   If a car in the train which was being inspected was wanted before the inspector had finished his work, the yard master would go to the car inspector and ask permission to take it out.   The petition charges negligence on the part of defendant's employes in kicking said cars against the train which was being inspected, and it is averred that plaintiff's intestate was in the exercise of due care when killed. The defenses are that the death of Canon was caused by his own negligence; that he assumed the hazard, as one incident to his employment; that his death resulted from his violation of the rules of the company. To that division of the answer pleading the rule and its violation, the plaintiff replied in denial, and averred that the rule had no application to a case like this, and that it had been waived by the company.   The cause was tried to the court and a jury, and at the close of the evidence introduced on behalf of the plaintiff, the defendant moved for a verdict in its favor because the plaintiff had failed to establish a case entitling her to recover, because it appeared that the negligence of plaintiff's intestate directly contributed to produce his death, and for the reason that said intestate was not within the provisions of section 1307 of the Code.   The court sustained the motion, and a

verdict was returned for the defendant, upon which judgment was entered. Plaintiff appeals.—*Reversed.*

*Shortley & Harpel* and *C. E. Cohoon* for appellant.

*J. C. Cook* and *George E. Clark* for appellee.

KINNE, C. J.—I. The controlling question in the case is, whether the employment of plaintiff's intestate was such as to bring him within the provisions of Code, section 1307. That section provides, that "every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the wilful wrongs, whether of commission or omission of such agents, engineers or other employes, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed." Counsel for appellee contend, that in view of the custom, as shown by the evidence in this case, the employment of plaintiff's intestate "did not contemplate the hazards of moving cars or trains while he was engaged in the work of inspection," and that, by permitting the cars to be taken from the train before he had finished inspecting the whole train, he thereby waived the safety which the custom and rules afforded, and thus placed himself within reach of hazards not contemplated by his employment, and therefore the protection of the statute is not available in his case. Stated in another way, appellee's theory is that, under the custom of the company, cars were to be inspected when at rest and not moving, and, as his work was to be done under such conditions, he was not exposed to the dangers of moving cars. Counsel

cite and comment upon many cases decided by this court wherein the question of the applicability of this statute has been discussed and determined.   We have recently had occasion, in the cases of *Butler v. Railway*, 87 Iowa, 213 (54 N. W. Rep. 211), and *Keatley v Railroad Co.*, 94 Iowa, 685 (63 N. W. Rep. 560), to review nearly all of the cases cited, and shall not give them extended consideration.   It is said in *Butler's Case:* "Whether the statute applies to a case like this depends on its phraseology, and the purpose and object sought to be attained by its enactment.   In the cases heretofore cited it has repeatedly been held that this statute was intended for the protection of employes who, from the very nature of their employment, are exposed to the hazards peculiar to the business of using and operating a railroad." Recovery is not limited even to cases where the injury was received by the movement of cars or engines on the track.   *Smith v. Railway Co.*, 78 Iowa, 584 (43 N. W. Rep. 545).   In *Haden v. Railway Co.*, 92 Iowa, 229, also, 99 Iowa, 735 (60 N. W. Rep. 537), the plaintiff was injured while working as a section foreman.   The court said: "It is true that plaintiff was not engaged in the operation of trains, in the sense of being an employe on a train; but his work was along and on a track on which trains were operated, and had special reference to train movements, in the way of keeping the track in repair and in condition therefor."   In *Larson v. Railroad Co.*, 91 Iowa, 81 (58 N. W. Rep. 1076), it appeared that a section hand had been injured while propelling a hand car, by a collision with a flat car used by the section men, and it was held that plaintiff could recover.   In *Keatley's Case* this section of the Code was construed to render the defendant liable for an injury to an employe whose duty it was to carry drinking water to a gang of men working upon a bridge.   In considering this section the court said the

law has been applied in many cases "on the ground that it is applicable to all of a certain class; that is, those engaged in employment which exposes them to the peculiar dangers and perils of the operation of a railroad." It is therein held that the protection of the statute is not limited to the case of employes engaged in the operative department of the road. As is said in *Smith v. Railway Co., supra,* the test of liability is, "Does the duty of the employe require him to perform service which exposes him to the hazard peculiar to the business of using and operating a railroad?" Clearly, the duty of car inspector, which requires the employe to go under and between cars, exposes him to the hazards peculiar to the business of using and operating railroads. It matters not that it may be contemplated by the custom in force that cars shall remain absolutely as rest while such duty is being performed. He is nevertheless, exposed to the perils and hazards which may result from a movement of the cars in violation of such custom. His injury in this case was caused by the operation of the road, by the movement of trains or cars thereon, and his work constantly exposed him to just such perils and dangers as are incident to the movement of cars. The claim that he, by permitting the yard master to take out the four cars, voluntarily went outside of his employment, and threw aside the protection which had been placed around him for his safety, is not well founded. Indeed, it appears from the evidence that, in permitting the yard master to take out the cars, he was but conforming to the custom in force when a car was wanted before the entire train had been inspected. The applicability of this section is not to be determined, as counsel seems to think, by the fact, if such it be, that the employment of Canon did not contemplate the hazards of moving trains or cars while he was engaged in his work. It is not a

question of contemplation at all, but a question of whether in fact he was, while engaged in his work, exposed to the perils and hazards incident to the movement of cars or trains. That he was so exposed, no matter what the parties might have contemplated, is too plain to admit of argument.

II. It is said that plaintiff's intestate was guilty of contributory negligence. This claim is based upon a claimed disobedience of a rule, and upon what is said to have been a waiver of the custom. In the answer, defendant pleads that for the protection of car inspectors the company had promulgated a rule providing that "a red flag by day and a red light by night, placed on the end of a car, denotes that the car inspectors are at work under or about the car or train. The car or train so protected must not be coupled to or moved until the red signal is removed by car inspectors." It is averred that Canon knew of said rule, and did not obey it, and that such disobedience resulted in his death. Whatever may have been Canon's duty, under other circumstances, he was not, in law, guilty of negligence, under the facts established, for he had the promise of the yard foreman, who had the control of the movement of cars in the yards, that no cars would be sent back upon the track upon which stood the train which he was inspecting. There is no basis for the claim that Canon, in consenting to the removal of the four cars, must be presumed to have known that some of them would be kicked back again on that track, and hence should have ceased inspecting until after the other cars had been returned. He had the express promise of the man who controlled the movement of cars that no cars would be sent back on that track. He had done everything required of him to protect himself from danger from moving cars, by telling Applegate that he was not through inspecting the train, and

that he must not throw any cars in on that track. Having Applegate's promise that no cars would be thrown in on that track, he had a right to rely thereon, and to pursue, as he did, his work, relying upon Applegate to see to it that his safety was not imperiled by cars being kicked down upon the track while he was still inspecting the train. As a matter of law, it cannot be said that Canon was negligent. The court below erred in sustaining the motion to direct a verdict.—REVERSED.