JOHN KEATLEY, Administrator of the Estate of ROBERT KEATLEY, Deceased, v. THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

Negligence: FELLOW SERVANTS: *Railroads.* The foreman of a gang of bridge repairers, who was furnished with a flag, and charged with the duty of signaling approaching trains to slow up if the condition of the bridge required it, is engaged in the operation of the railroad, within the meaning of Code 1873, section 1307, which renders railroad companies liable for injuries to employes caused by the negligence of co-employes "engaged in the operation of any railway;" and the railway company is liable for the death of an employe who was killed by the derailment of a train while crossing the bridge, owing to the foreman's neglect to signal the train to slow up.

*Appeal from Dubuque District Court.*—HON. J. L. HUS-
TED, Judge.

MONDAY, OCTOBER 18, 1897.

PLAINTIFF, as the administrator of Robert Keatley,
deceased, brings this action to recover damages of the
defendant for causing his death. There was a trial to
a jury, and a verdict for plaintiff, upon which a judg-
ment was entered. Defendant appeals.—*Affirmed.*

*W. J. Knight* and *Hubert O'Donnell* (*James Fen-
tress,* of counsel) for appellant.

*James H. Shields* for appellee.

KINNE, C. J.—I.   Robert Keatley, the decedent,
was killed on October 24, 1890, near bridge 26 on the
defendant company's railroad, by reason of a freight
car on said road leaving the track and falling on
him. At the time of the accident, the defendant com-
pany was engaged in building an iron bridge over a
creek, in place of a wooden one, which had been
removed. This bridge was seventy-one feet long, and its
ends rested on stone abutments. On the day mentioned,
there were two gangs of men at work, one working
erecting the bridge, and known as the "iron gang," of
which one Mantz was foreman, and the other known as
the "stone gang," with one Egan as foreman. The latter
gang were not working on the bridge or its abutments,
but were engaged in building a retaining wall from the
north end of the east abutment of the bridge, east-
wardly, along the north line of the right of way. The
iron gang were at work finishing the superstructure of
the bridge, and expected to complete it the following
day. The bridge was on the main line of the defend-
ant's railway, and, while it was being erected, the traffic

of the road was carried on, the trains passing over this bridge before it was fully completed. The stone gang had a derrick for use in raising stone for use in the retaining wall. The platform on which this derrick stood was built on the north side of the track, and about seven feet from it, and some ten or fifteen feet east from the new east abutments. It was about two feet lower than the rails of the track. The work of each gang of men was independent of that of the other. Decedent was about fifteen years of age, and was employed by Egan, the foreman of the stone gang, to carry water to the members of that gang, and to do such other work as the foreman might direct. Shortly, after 5 o'clock on the day of the accident, decedent was on the derrick platform. He and other members of his gang were engaged in securing the boom of the derrick, preparatory to ceasing work for the day. The iron gang was on the bridge. A freight train, containing twenty loaded cars, came from the west. The engine and ten cars passed over the bridge on the rails. The next two cars were derailed, but passed over the bridge on the ties, and, as they came opposite the derrick platform, one of them rolled off the trestle, fell on the derrick platform, and killed the deceased. The bridge went down with the remainder of the train, and was pushed eastward, off the west abutment.

The negligence charged is "that, at the time, the bridge was but partially completed; that its ends were resting on abutments about seventy feet apart; that it was not supported or held in place by guys, rods, or other supports; that the rails of the track crossing the same were not securely spiked to the ties, but were, negligently and carelessly allowed to lie in a loose, unspiked, and insecure condition for the passage of trains thereon; that said bridge, in its unfinished and insecure condition, with the loose and unfastened rails thereon,

was negligently and carelessly allowed to lie and
remain in such dangerous and insecure condition; that
while decedent was employed on and about the
same, where his duty called him to be, and while said
bridge and the ties and rails thereon were in said inse-
cure and dangerous condition, a heavy freight train
was, negligently and at a high and dangerous rate of
speed, run by appellant, from the west, down a steep
grade, around a curve, and onto said bridge; that the
track, rails, and ties thereon, were thereby spread and
thrown apart; that said train was derailed, and was
thrown with great force against and upon the said
bridge; that the same was thrown down; that decedent
was thereby thrown under said bridge and train, from
the effects of which he died;   *   *   *   that said acci-
dent, injury, and death of decedent were caused by the
grossly negligent, careless, and improper condition of
said bridge, and the ties and rails thereof, so allowed
to be by appellant, and the negligent and dangerous
act of so running said train at a dangerous rate of
speed over the same, and without fault or negligence on
the part of decedent." In an amendment to the petition
it is charged "that the employes and servants of defend-
ant engaged in the construction of the superstructure of
said bridge, at the time of said accident, negligently
and carelessly omitted, in violation of the rules of
defendant, to give notice and warning to those in charge
of said freight train, so run at a dangerous rate of speed,
as aforesaid, of the incomplete, unsafe, and dangerous
condition of said bridge, by setting out a red flag or
other warning, and omitted and neglected to give any
warning or notice whatsoever to those in charge of said
approaching freight train of the unsafe and incomplete
condition of said bridge at the time of said accident, and
as was done at other times previous to the day of said
accident." In a further amendment it was charged that

at the time of the accident the ties of said bridge were loose and unspiked, and that the same were spread apart, and were sawed and cut on the ends thereof, and were allowed to be in that negligent condition when said train ran on the bridge, and caused the accident. The answer was a general denial. It was also averred that the accident was caused by the decedent's negligence. It was also claimed that the decedent was not in the defendant's employ, in the operation of defendant's railroad, and not engaged in any duty which brought him within the protection of section 1307 of the Code of 1873.

II. This is the second appeal in this case. The opinion in the former hearing will be found in 94 Iowa, 685. On the last trial the court instructed the jury that the foreman of the stone gang was not guilty of negligence, and that the engineer and other employes in charge of the freight train were not guilty of any negligence. In the sixth instruction given to the jury, the court charged as follows: "The decedent, Robert Keatley, was, at the time of the accident and injury complained of, upon the derrick platform, in the line and discharge of his duty, under the direction of the foreman of the gang with which he was employed; and if you find from the evidence and under these instructions that the foreman of the iron gang negligently permitted a train to run at a dangerous rate of speed, upon an unfinished, insecure, or unsafe bridge, by reason of which the cars left the track, and caused the death of deceased, then, under the statute of this state, the defendant is liable herein." In the eleventh instruction given to the jury, the court charged: "If the bridge in question, including the rails and ties, was in such a condition or stage of completion that ordinary care and prudence demanded that trains should be operated in approaching and crossing said bridge at a slow rate of speed, then it was

the duty of the foreman of the steel gang to, by placing
out a slow flag, give warning to the approaching trains,
so that the employes operating such trains might know
that it was necessary to approach and cross such bridge
slowly; and if the accident or injury complained of was
caused by the unsafe condition of the ties and rails upon
the bridge, and the speed of the train, which was not
reduced, by reason of the failure of the foreman of the
iron gang to properly warn the approaching train, then
the defendant is liable." No other grounds of negli-
gence were submitted to the jury. Much is said in argu-
ment by the appellant to the effect that this boy Robert
Keatley and his stone gang and the iron gang were fel-
low servants, and that, in the absence of the statute
(section 1307 of the Code of 1873), there could be no lia-
bility under the established facts. It is then insisted
that the facts do not bring the case within the provis-
ions of the statute. Appellant's contention is that the
negligence of the foreman of the iron gang was not the
negligence of one engaged in the operation of the road,
within the meaning of the statute, and that decedent
was not injured by reason of the negligent operation of
the road. On the former appeal this language was used
in the opinion: "Applying the facts attending the
employment of the deceased to the statute, we think
that if he was not out of the line of his duty in standing
on the derrick platform, and the employes of the defend-
ant negligently ran the train at a dangerous rate of
speed, upon an unfinished and unsecure and unsafe
bridge, by reason of which the cars left the track, and
caused the death of the deceased, he was within the
statute, and a right of action accrued." Counsel now
insists that plaintiff cannot recover unless it appears
that the injury complained of was caused by or through
the negligence of the employes who were running or
operating the train, and, as the trial court instructed

the jury that said employes were not negligent, there can be no recovery under the statute. The language of the former opinion is to be construed with reference to what was said before the court, and the issues as then made. It was then said that no charge of negligence on the part of employes for failing to put out a flag or other sign to stop the train was made in the petition. The case is now before us on allegations of negligence not made before; and, in view of this situation, there is nothing in the former opinion justifying the claim counsel now make for it, as applicable to the facts now before us. The statute of 1873 (Code, section 1307) is as follows: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the wilful wrongs whether of commission or omission of such agents, engineers, or other employes, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." We do not intend to review all of the cases construing this statute. Many of them are discussed and reviewed in the following cases: *Butler v. Railway Co.*, 87 Iowa, 213; *Keatley v. Railroad Co.*, 94 Iowa, 685; *Canon v. Railway Co.*, 101 Iowa, 613; *Smith v. Railway Co.*, 78 Iowa, 584; *Haden v. Railway Co.*, 92 Iowa, 229. On the former appeal we held that the employment of decedent placed him within the protection of this statute. *Keatley v. Railroad Co., supra.* Upon the record now before us, the facts touching his employment are the same as they appeared upon the former trial. We discover no reason for not adhering to our former holding in that respect.

In determining whether the accident resulted from the negligent operation of the train, it is not necessary, as counsel argue, that such negligence must be the act or failure to act of employes who are actually on the train. A train may be controlled by those upon it, or it may be controlled by one not on it, by signals given to those operating the train. It can make no difference, as to the right of recovery, whether the negligence, if any, which resulted in causing the accident, was the act or failure to act of one of the trainmen, or of some other man in the defendant's employ, and who was charged with the duty of controlling the movements of the train by flag signal or otherwise. The foreman of the iron gang had control over the speed of trains across this bridge, and if he failed to signal the engineer of the train, and, as a result, it moved across the bridge at a dangerous rate of speed, thereby killing the decedent, the negligence was that of one charged with responsibility with respect to the movement of the train. Suppose this foreman of the iron gang had signaled the engineer to go slow across the bridge, and the engineer disobeyed the signal, would any one question the liability of the company if such disobedience resulted in Keatley's death? Surely not. There can be no doubt, then, of liability when another employe (foreman of the iron gang), who is charged with a duty with reference to the moving train, fails to perform it, and as a result a man is killed. *Pierce v. Railway Co.*, 73 Iowa, 140; *Doyle v. Railway Co.*, 77 Iowa, 608. Counsel is in error when he says: "In the case at bar there was no negligence in the operation of the railroad by any one engaged in its operation." The foreman of the iron gang, while not an operative upon the train, engaged in the physical labor of controlling its movements, was at the bridge, furnished with a slow flag, charged with the control of the operation of the train over that

uncompleted structure, and to that extent it was his duty to control the operation of the train, by giving the proper signal to slow up the train in case the condition of the bridge required it. If he neglected that duty, he neglected a duty touching the operation of the road, because, so far as the duty enjoined upon him to signal the train was concerned, he was as much engaged in operating the road, within the meaning of the statute, as the engineer on the train.

Now, the evidence was conflicting as to the condition of the bridge at the time of the accident, and especially so as to the distance between the ties; some of the evidence showing that in some places they were several feet apart, and other evidence showing that the distance was proper. There was evidence as to what was necessary to complete the bridge; and the evidence of defendant in this case showed that some of the ties had been taken out before this accident; that, of the remaining ties, every other one was spiked; and that such spikes were loose enough to permit the ties to be moved back and forth. Whether the bridge was in such a condition as to be safe for trains to cross at the rate of speed attained by this train, which killed Keatley, was a question for the jury, under all of the evidence. Failure to flag the train is now pleaded as negligence, and the evidence is ample to show that the foreman of the iron gang was furnished with a slow flag, and that it was his duty to use it in case the bridge was not safe. Whether he was negligent in that respect was a matter properly submitted to the jury. They must have found that the condition of the bridge was such as to have required the train to be flagged, and that the foreman of the iron gang was negligent in failing so to do; and the verdict has such support in the evidence that we should not disturb it. In view of what we have said, the court did not err in refusing to instruct the jury that plaintiff could not recover.

III.   Claim is made that the cars were derailed by a cause other than the condition of the bridge; that a brake shoe or brake beam was the real cause of the accident.   There was evidence that, as the train came on the bridge, fire was seen to fly from the rails or wheels, but what caused it does not appear.   This evidence was all before the jury, and considered by it; but, as we have said, the evidence sustains the verdict, and the judgment must be AFFIRMED.