PETER AKESON v. THE CHICAGO, BURLINGTON & QUINCY
RAILWAY COMPANY, Appellant.

**Master and Servant:** NEGLIGENCE: *Fellow servant.* It being the
duty of two railroad employes to fill tenders with coal from an
adjoining track, the negligent act of one of them which injured
the other by pushing a plank used as a bridge between coal car
and tender into the car after the work was done and the engine
about to start, was connected with the use and operation of a rail-
road, within Code, section 2071, abrogating the fellow servant rule
as to acts of negligence connected with such use and operation.

*Appeal from Montgomery District Court.*—HON. W. R.
GREEN, Judge.

THURSDAY, MAY 26, 1898.

ACTION at law to recover for personal injuries alleged
to have been caused by negligence on the part of the defend-
ant. There was a trial by jury, and a verdict and judgment
for the plaintiff. The defendant appeals.—*Affirmed.*

*Smith McPherson* for appellant.

*J. M. Junkin* for appellee.

LADD, J.—For about two and a half years before the
month of August, A. D. 1892, when the accident in question
occurred, the plaintiff had worked for the defendant in its
coal house at Red Oak. His duties required him to shovel
coal from the cars into chutes, to break the coal and wet it
for use, and to assist in filling the tenders of locomotive
engines with coal. In the month referred to, the coal house
was rebuilt; and, while that was being done, tenders were
supplied with coal from cars which were placed on the coach
track next to the main line. The sides of the coal cars were
about four feet high, and, when a tender was to be loaded, it
was run onto the main line track, opposite the coal car. A

bridge was made by placing together two planks, each of which was about ten feet in length, one foot in width, and two inches in thickness, in such manner that one end of each plank rested on top of the coal car, and the other on top of the tender. The bridge thus made was nearly level, and was used by plaintiff and a co-employe in passing from the car, with a box which was provided with handles at each end, and was filled with coal, and in returning with the empty box after its contents had been dumped into the tender. On the day of the accident, a locomotive engine in charge of an engineer and fireman was run up to the coal car for coal, and a bridge was made, and the tender filled by the plaintiff and his co-employe, Forshay, in the manner described. When that work was finished Forshay remained on the tender, as he frequently did, for the purpose of riding on it to the water tank, to get water for the engine, while the plaintiff returned over the bridge to the coal car. As he was about to step from the bridge to the car, Forshay picked up a plank, and shoved it into the car. The plantiff claims that the plank caught one of his feet, and made him fall or jump into the car in such a manner as to cause a double hernia, and the evidence tends to sustain the claim. The verdict and judgment in his favor were for the sum of one thousand five hundred dollars. The assignment of the claim in suit to Carrie Akeson has been shown, and she has been substituted as party plaintiff.

The liability of the defendant depends upon the meaning and application of section 2071 of the Code (section 1307, Code 1873), which is as follows: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the negligence of agents or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers, or other employes, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

The evidence tends to show that the accident was occasioned by the negligence of Forshay. It is said, howerever that this was in no manner connected with the use and operation of the railway. The court instructed the jury "that, at the time the injury complained of occurred, the plaintiff was working for defendant, loading coal into the tender of what is called a 'live engine,' with the help of some co-employes. When so doing, he and his co-employes were engaged in operating defendant's railway." In argument, nearly all of the authorities construing the statute set out are reviewed, and it is respectively contended that, under previous decisions, this case falls within and without its purview. For the purpose of determining this controversy, and in order to deduce a rule, if possible, in harmony with the meaning of the legislature, we shall consider somewhat in detail what has heretofore been said in construing this statute. In 1862 the first act modifying the common law was adopted. It provided that "every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employes of the corporation to any person sustaining such damage." Laws 1862, p. 198. Prior to this, an employe could not recover from the company damages occasioned by the negligence of a co-employe in the same service. *Sullivan v. Railroad Co.,* 11 Iowa, 421; *Jones v. Railroad Co.,* 16 Iowa, 6; *Hunt v. Railroad Co.,* 26 Iowa, 363. The constitutionality of this statute was passed upon in *McAunich v. Railroad Co.,* 20 Iowa, 338, and there placed upon precisely the same ground as stated by Chief Justice Fuller in *Railroad Co. v. Pontius,* 157 U. S. 209 (15 Sup. Ct. Rep. 585), when construing a similar statute of the state of Kansas. In *Ney v. Railroad Co.,* 20 Iowa, 347, contractors and persons engaged in constructing the roadbed and in laying down ties and rails are held not to be engaged as employes in operating the road. The court, in order to uphold the constitutionality of the law in *Deppe v. Railroad Co.,* 36 Iowa, 52, limited the term "employes" to those engaged in operating

the railroad, saying, through Cole, J.: "The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads. When thus limited it is constitutional; when extended further, it becomes unconstitutional." *Johnson v. Railway Co.*, 43 Minn. 222 (45 N. W. Rep. 156; *Railway Co. v. Mackey,* 127 U. S. 205 8 Sup. Ct. Rep. 1161); *Railroad v. Pontius,* 157 U. S. 209 (15 Sup. Ct. Rep. 585); *Bucklew v. Railway Co.*, 64 Iowa. 603. The *Deppe Case* was decided under the act of 1862. Deppe was engaged in shoveling dirt on mud cars, and sometimes went with the train to unload, and at other times remained at the bank to undermine with a pickax. The bank was about twenty feet high from the rock on which he stood to shovel. While shoveling loose dirt, the bank caved down, and injured him. In holding that he was entitled to recover, this language is used: "It is true, he was not injured while or by operating the train; but neither the act itself nor the constitutional limitation requires us to put this very narrow construction upon it. The plaintiff was employed for the discharge of a duty which exposed him to the perils and hazards of the business of railroads; and, although the injuries did not arise from such hazards, they cannot be separated from the employment. If the plaintiff had been employed exclusively for shoveling or loading the dirt, he could not recover, although he might have ridden to and from his work on the cars. The ground we rest our affirmance upon is that where the employment is entire, and a part of the continuous service relates to the perilous business of railroading, it brings the case within the meaning of the statute and its constitutional limit." The soundness of this decision is questioned in *Malone v. Railway Co.*, 61 Iowa, 326, and is upheld in the same case reported in 65 Iowa, 422, wherein it is said: "To meet the objection that the act of 1862 created a rule of liability which was applicable to railroad companies alone, and did not affect other employes under precisely the same circumstances, and that it was therefore class legislation, and in violation of the state constitution, the court, in *Deppe's Case,* construed the act as creating a

remedy only in favor of that class of employed who were engaged in the hazardous business of operating railroads; and the correctness of the holding of that case on that question is not doubted. But the subsequent legislation has established a new rule as to the class of acts for which the companies are liable. So that, to entitle an employe now to recover against the company for injuries which he has sustained in consequence of the negligence or mismanagement or wilfulness of a co-employe, he must show (1) that he belonged to the class of employes to whom the statute affords a remedy, and (2) that the act which occasioned the injury was of the class of acts for which a remedy is given. We think it very clear that the plaintiff has failed to establish the latter fact." *Deppe's Case* may, then, not be deemed controlling in determining what is meant by the use and operation of a railroad. Discrimination has not been made in citing this case in subsequent opinions. It has been referred to as holding that the negligence occasioning the injury need not necessarily be connected with the movement of trains, cars, or machinery on the tracks without calling attention to the change in the statute. That the employment at the time of the injury must have exposed the complainant to the hazards of railroading, without reference to what he may be required to do at other times, is no longer questioned. *Butler v. Railroad Co.,* 87 Iowa, 206; *Keatley v. Railroad Co.,* 94 Iowa, 685; *Canon v. Railway Co.,* 101 Iowa, 613. It may be well to say, however, that the statutes of Minnesota and Kansas are like that construed in *Deppe's Case.* See *Lavalle v. Railway Co.,* 40 Minn. 249 (41 N. W. Rep. 974); *Railroad Co. v. Pontius,* 52 Kan. 264 (34 Pac. Rep. 739). In *Johnson v. Railway Co.,* 43 Minn. 222 (45 N. W. Rep. 156), the supreme court of Minnesota, after mature consideration, held that the statute "only applies to those employes who are exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers." With one exception, recovery has not been permitted in any case in this state, other than *Deppe's,* where the wrongful act causing the injury was not occasioned by the

actual movement of trains, cars, or machinery on the track. *McKnight v. Construction Co.,* 43 Iowa, 406; *Frandsen v. Railroad Co.,* 36 Iowa, 372; *Handelun v. Railway Co.,* 72 Iowa, 709; *Nelson v. Railway Co.,* 73 Iowa, 570; *Larson v. Railway Co.,* 91 Iowa, 81; *Haden v. Railway Co.,* 92 Iowa, 226; *Pierce v. Railway Co.,* 73 Iowa, 140. On the other hand, there are numerous cases holding that, although the complainant was engaged in work on a railroad, he may not recover. In *Potter v. Railway Co.,* 46 Iowa, 399, a person injured while moving an engine driver in the shop was held not to have been injured in the operation of the road. *Smith v. Railroad Co.,* 59 Iowa, 73. The plaintiff was not entitled to recover when injured while engaged in loading a car on the track with timber. To the same effect, see *Schroeder v. Railway Co.,* 41 Iowa, 344. In the same case reported in 47 Iowa, 375, it appeared the plaintiff was injured by the movement of cars, and he was permitted to recover. In *Malone v. Railway Co., supra,* it was held that assisting in closing the door of the roundhouse after the engine had entered was not included in operating a road. *Luce v. Railway Co.,* 67 Iowa, 75. The plaintiff, in hoisting coal for the purpose of filling a car by means of a crane, was not engaged in the operation of the road. In *Stroble v. Railway Co.,* 70 Iowa, 560, the court, speaking through Beck, J., said: "This negligence, to render a corporation liable, must be of an employe, and affect a co-employe, who are in some manner performing work for the purpose of moving a train, as loading or unloading it, superintending, directing, or aiding its movement. The persons must be connected in some manner with the moving of trains. Work preparatory thereto, which may be done away from a train, is not connected with its movement. The statute, it will be observed, holds the corporation liable for the negligence of a co-employe which is 'in any manner connected with the use and operation of any railway.' What is the use and operation of a railway? It is constructed for the sole purpose of the movement of trains. That is its sole use. What is the operation of a railway? They can be operated in no other

way than by the movements of trains." The first three sentences were quoted with approval in *Butler v. Railroad Co., supra,* as holding that the party injured must be exposed to the hazards of railroading. Rothrock, J., in *Pyne v. Railway Co.,* 54 Iowa, 223, said: "We think the proper test in determining the question is: Does the duty of the employe require him to perform services which expose him to hazards peculiar to the business of using and operating a railroad? If it does, and while in the line of his duty, he, by the negligence of a co-employe, receives an injury from a passing train or from other appliances used in the use and operation of the road, he may recover." In *Foley v. Railway Co.,* 64 Iowa, 644, the same judge used this language: "With the exception of *Deppe's Case,* all the actions in which this court has determined that railroad companies are liable in this class of cases are those where the injury was received by the movement of cars or engines upon the track. In *Larson v. Railway Co.,* 91 Iowa, 81, the court, through Given, J., said that "an examination of the cases preceding that of Stroble will show that in none of them was it held that the use and operation of a railroad were limited to the movement of what are commonly known as 'trains.' The cases are all grounded upon the view that the statute applies when the employment and the wrong are connected with the handling of railroad machinery moved upon railroad tracks." In that case the injury was occasioned by the moving of a hand car. See *Railroad Co. v. Artery,* 137 U. S. 507 (11 Sup. Ct. Rep. 129). In *Nelson v. Railway Co., supra,* the plaintiff was injured while operating a ditching machine on a railroad. The use and operation of a railroad does not consist in the movement of trains alone. It is within the statute if the injury is occasioned, as said in *Larson's Case,* "in handling the railroad machinery moved upon a railroad track." In *Butler's Case* it is said by Kinne, J., after reviewing many previous decisions: "In the cases heretofore cited, it has repeatedly been held that this statute was intended for the protection and benefit of employes, who, from the very nature of their employment, are exposed to the hazards

peculiar to the business of using and operating a railroad."
The only dangers peculiar to railroading are those occasioned
by the movement of the engines, cars, and machinery on the
track, or directly connected therewith.    It is evident that
the statute contemplates such injuries only as are caused by
the negligent acts of employes so engaged.  In no other proper
sense is a railroad used and operated.    The exception referred
to is that of *Smith v. Railway Co.,* 78 Iowa, 583.    There the
plaintiff was a snow shoveler, and, while not shoveling, rode
in the caboose.  The water-closet of this was filled with shovels
and picks.  The light of the engine faced towards the caboose.
In pressing necessity, the plaintiff, finding the closet in this
condition, went on the platform to relieve himself.  This was
covered with snow and ice, and, being for the moment blinded
by the headlight, he was unable to see the bridge.    He slipped
and fell to the ground below.  The court, through Robinson,
J., said:    "The placing of the tools in the water-closet,
the stopping of the caboose on the bridge, the failure to notify
the occupants of its position, and permitting ice and snow to
accumulate on the platform, were matters connected with the
use and operation of the train, and hence of the railway.  He
would not have been hurt had he not been on the train in the
discharge of his duties.  The services of himself and others
were required, and, in order that the train might be moved,
and when the tracks were cleared of obstructions, he was
obliged to ride on the train.  We think he was within the
statute."    To hold that the injury must have been caused by
the actual movement of the cars, engines, or machinery, to
come within the protection of the statute, would be giving too
narrow a construction to the words "in any manner connected
with the use and operation of any railway."    Besides, as
shown, such a conclusion would be contrary to previous adjudi-
cations, repeatedly cited and approved by this court.    The
rule in Minnesota, with a statute by construction like ours, is
that "if there is any substantial element of hazard or condi-
tion of danger which contributed to the injury, and which is
peculiar to the railroad business, the statute applies."  *Nichols*

*v. Railway Co.,* 60 Minn. 319 (62 N. W. Rep. 386); *Leier v. Transfer Co.,* 63 Minn. 203 (65 N. W. Rep. 269); *Blomquist v. Railway Co.,* 65 Minn. 69 (67 N. W. Rep. 804).

The peculiarity of the railroad business, which distinguishes it from any other, is the movement of vehicles or machinery of great weight on the track by steam or other power, and the dangers incident to such movement are those the statute was intended to guard against. If, then, the injury is received by an employe whose work exposes him to the hazards of moving trains, cars, engines, or machinery on the track, and is caused by the negligence of a co-employe in the actual movement thereof, or in any manner directly connected therewith, the statute applies, and recovery may be had. Beyond this, the statute affords no protection. The purpose of the lawmakers was evidently not to make men, because employed by railroad companies, favorites of the law, but to afford protection owing to the peculiar hazards of their situation. That the plaintiff's employment exposed him to the peculiar dangers of railroading admits of no doubt. The important question is whether the negligence of Forshay, causing the injury, was so immediately connected with and incident to the movement of the engine and tender as to come within the statute. We think it was. The engine had been detached from an incoming freight train, and was moved opposite the coal car, for the purpose of filling the tender with coal to be used as fuel, and, this done, by running two planks from the tender to the coal car. Over these the coal was carried in boxes, and, when this work was done, these were necessarily taken from the tender to enable the engine to move from the main track. In doing this, Forshay picked up and pushed one of the planks just as the plaintiff was about to step on the coal car, and, to save himself, the latter was compelled, in order to avoid this plank, to jump sidewise among some boxes below. The very purpose of removing the plank was to enable the engine to move, and if, in doing this, Forshay was negligent, such negligence was so closely connected with the movement as to come within the terms of the statute. Indeed, it is diffi-

cult to conceive of a case where negligence not in the actual movement of an engine is more directly connected therewith. The other issues were properly submitted to the jury. We discover no error in the record, and the judgment is AFFIRMED.