116  513
127  725

W. W. STEBBINS v. THE CROOKED CREEK RAILROAD AND
COAL COMPANY, Appellant.

**Railroads:** WHAT IS "OPERATION." Under Code, section 2071, pro-
viding that railway companies shall be liable for all damages
sustained by employes in consequence of the neglect of other
employes when such wrongs are connected with the operation of
any railway about which they are employed, an employe, who is
injured by the negligent act of a co-employe while transferring
rails from one car to another by use of a locomotive moving along
the track and drawing the rails by means of an attached rope
may recover of the railway company for his injuries.

*Appeal from Hamilton District Court.*—HON. J. R. WHIT-
AKER, Judge.

TUESDAY, MAY 13, 1902.

ACTION to recover for personal injuries received while
in the employment of the defendant company, engaged in
transferring railroad rails from one car to another. Ver-
dict and judgment for plaintiff. Defendant appeals.—*Af-
firmed.*

*J. F. Duncombe* and *J. L. Kamrar* for appellant.

*A. N. Boeye* for appellee.

McCLAIN, J.—Plaintiff was a fireman on an engine
operated on defendant's road, but at the time of receiving the
injury complained of, he was engaged, under the direction of
one Wilson, who was in control of the work, in transferring
rails from a car standing on the side track to another car
standing on the main track of the road. Two skids, consist-
ing of short rails, had been laid between the two cars, and
another rail had been set up at the further side of the car to

which the rails were being transferred, and to this rail a .
pulley was attached. A rope connected with the engine,
which stood on the main track near the car to which the
rails were being transferred, but disconnected from such
car, passed through this pulley, and was used in connection
with the motion of the engine in drawing the rails over
from the one car to the other. The method of operation was
to put several rails on the skids, and attach a rope to the
middle of them by means of a short chain and hook, and then
by moving the engine with which the rope was connected
away from the car to which the rails were being transferred,
to draw the rails on the skids across from the one car to the
other. Plaintiff's business in this connection was to attach
the rope to the middle of the rails and then stand at one end
of them, and, after the engineer was signaled to move the
engine to keep the rails straight on the skids while they
were being drawn over. The evidence would support the
finding by the jury that Wilson was superintending the opera-
tion; that the bunch of rails which was being transferred
when the accident happened from which plaintiff received
his injury, stuck on the skid at the end where plaintiff was
standing; and while plaintiff was trying to pull the rails
straight, so that they would move over together on
the skid, Wilson pushed them with his foot, and
instead of the rails moving on the skid the skid
itself slipped off the car, letting the ends of the rails
down, so that they struck plaintiff and broke his leg; that
the act of Wilson was negligent and brought about the in-
jury to plaintiff; and that plaintiff was not negligent. It
seems clear that in pushing the rails Wilson was not acting
as vice principal, but as co-employe of plaintiff; for, as to the
very thing which was being done, Wilson and plaintiff were
acting in the same capacity. Each was assisting in the
movement of the rails. The question we have before us is
whether, assuming that the injury resulted from the negli-
gent act of Wilson, and that Wilson was a co-employe with

plaintiff, the latter can recover against defendant for injuries resulting from the negligence of such co-employe. Both of these men were in the general employment of the defendant; and if the business in which they were at that time immediately engaged was connected with the use and operation of defendant's railway, then plaintiff may recover from defendant for the injury resulting from the negligence of his co-employe Wilson, under the provisions of Code, section 2071, in which it is said that "every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of the agents, or by the mismanagement of the engineers or other employes thereof, or in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers, or other employes, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed." The mere fact that an employe is engaged in loading or unloading cars standing on the railroad track does not bring him within the scope of the statute. *Schroeder v. Railroad Co.*, 41 Iowa, 344; *Smith v. Railroad Co.*, 59 Iowa, 73; *Luce v. Railway Co.*, 67 Iowa, 75. But here the loading was being accomplished by means of the use of a locomotive engine moving on the railway track, and the question is whether the use of the engine in drawing the rails from one car to another brings the case within the provisions of the statute. It is argued by counsel for appellant that, inasmuch as this loading of the rails had no connection with the operation of any train, and might have been accomplished by means of power furnished by a stationary engine, or from any other source, as well as by the use of a locomotive engine on the track, the act was not so connected with the operation of a railroad as to be within the statute. But the statute is not limited in its application to those employes who are immediately connected with the operation of trains. *Pyne v. Railroad Co.*, 54 Iowa, 223; *Larson v. Railway Co.*, 91 Iowa, 81; *Chicago*,

*M. & St. P. Ry. Co. v. Artery,* 137 U. S. 507 (11 Sup. Ct.
Rep. 129, 37 L. Ed. 747) ; *Akeson v. Railway Co.,* 106 Iowa,
54. The plaintiff in this case was engaged in transferring
rails from one car to another by means of the use of a locomotive engine moving on the railroad track. The engine was
furnishing the motive power to draw the rails across from
one car to the other, and we think this was a part of the
hazardous business of operating a railroad. The danger was
not necessarily the same as it would have been had the power
used been a stationary engine or a horse. The operation involved the use of heavy machinery and the great power of
a locomotive engine. A case quite analogous is that of
*Nichols v. Railway Co.,* 60 Minn., 319 (62 N. W. Rep. 386),
in which it was held that an employe injured by reason of the
negligence of another employe in connection with the straightening out and stretching, by means of a locomotive engine,
of a wire cable, to be subsequently used in the pulling of a
plow on flat cars in the repair of the road, was within the
contemplation of a statute of that state, similar to its provisions to the section of our Code above referred to. While
as indicated in *Akeson v. Railway Co., supra,* the language
of the Minnesota statute is broader in its terms than that
of the Code section which we are construing, yet the courts
of that state have limited the meaning of the language of
their statute so that it includes only cases involving the hazardous business of railroading, and the decision is, we
think, directly in point. It has been difficult, in many of
the cases which have come before us, to determine on which
side of the dividing line the acts in question should fall; but
in the conclusion which we reach we are not running counter
to any of the decisions already made in construing the
statute, and we are carrying out its general policy.—AF
FIRMED.