R. W. HUGHES, Appellee, v. THE IOWA CENTRAL RAILWAY
Co., Appellant.

**Railroads:** NEGLIGENCE OF CO-EMPLOYE: LIABILITY STATUTE. A car
1    repairer, injured by a moving engine at a time when actually
employed at his work in the yards and upon the tracks of the
company, is as a matter of law within the provisions of Code
section 2071, relating to the liability of the company for the
negligence of a co-employé; and where there is no dispute in
the evidence as to the character of the employment, and but
one conclusion can be drawn therefrom by reasonable minds,
the court may properly instruct as to whether or not the case
comes within the statute.

**Negligence:** INSTRUCTION. In view of the evidence an instruction
2    that if after the engineer knew or had reason to know that
plaintiff was in a place of danger, he started the engine without
signal, the company was guilty of negligence, was not erro-
neous.

**Contributory negligence.** The evidence in an action for injuries to
3    one employed in repairing cars is reviewed and held to justify
a submission of the question of plaintiff's negligence.

*Appeal from Marshall District Court.*— HON. G. W. BURN-
HAM, Judge.

WEDNESDAY, MAY 3, 1905.

ACTION at law to recover damages for personal injuries
received by plaintiff while in defendant's employ as a car re-
pairer. Trial to a jury, verdict and judgment for plaintiff,
and defendant appeals.— *Affirmed.*

*George W. Seevers, John O. Malcolm,* and *Cummings
& Mote,* for appellant.

*Boardman, Aldrich & Lawrence,* for appellee.

DEEMER, J.— I. Defendant's yards in the city of Marshalltown cover many blocks of ground, and between the passenger station and the roundhouse and machine shops there are countless tracks, main line and switches, running almost east and west. North of the engine house and the turntable is the coal chute, and between them are three tracks, running east and west. The northernmost of these tracks, running close to and parallel with the coal chute, is known as the "coal track." South of the coal track, and within a short distance thereof, was the repair or "rip track," also running nearly east and west. This track joined the coal track some distance south of east of the coal chute. South and east of the coal chute, and between these tracks, was a water crane, from which engines obtained water. The repair track would hold fourteen or fifteen cars, and they were placed thereon for the purpose of being repaired. One Johnson was defendant's foreman in these yards, and had charge of the men at work therein. He had what is called "shanty" — we suppose, an office or headquarters — on the south side of an icehouse, which was south and east of the coal chute, and in passing from the coal chute to his shanty one had to cross the coal, repair, and two other tracks, which ran down toward the turntable. Plaintiff, Hughes, was in defendant's employ as a car repairer. His duties were to repair cars set in upon the repair track, which were subject to be moved as fast as repaired, and also to repair cars under the direction of his foreman upon any and all tracks in the defendant's yards. He was or might be required to repair cars while in transit upon any of the main line tracks in the yard, and was at all times subject to Johnson's orders with regard thereto. Indeed, cars which were partially repaired while on the repair track were often followed onto other tracks by Johnson's order, and the repairs completed while the car was in other parts of the yard. Plaintiff owned his own tools, he being, as we understand it, a carpenter, and with defendant's consent he kept them in the east end of the coal chute, which

he called his " shanty." He was required to go to work at 7 o'clock in the morning, and was expected to go each morning to Foreman Johnson's shanty to get his orders. His work, at times at least, necessarily subjected him to the perils incident to the movement of cars, engines, and trains, as he was frequently working and moving about them while they were in motion.

On the morning of November 5, 1902, plaintiff reported to Johnson at about 7 o'clock as usual, and was directed by him to put some linings in a car which stood on the repair track, to do it as quickly as possible, and, if he could not finish before the car was pulled out, to follow it out into the yards. He immediately proceeded northward toward his " shanty," crossing the tracks between the icehouse and the coal chute. As he went he noticed there was no engine upon the coal track. One Lang was a co-employé of plaintiff, who kept his tools at the same place, and who was to assist in the work of repairing the car. Lang was at the shanty in the coal chute when plaintiff, Hughes, arrived there, and he (Hughes) told Lang what the orders were. After plaintiff had secured his tools and was ready to start south to the repair track, he noticed that an engine had pulled up on the coal track, and was standing just south of the southeast corner of the coal chute taking water from the water crane. This engine was headed west, but had backed east from the coal chute, where it had been " coaled," to the water crane, in order that the tender might be filled with water. The engineer was at his accustomed place on the right side of the engine cab; and as plaintiff started to go toward the repair track he noticed the engineer, and the jury was justified in finding that the engineer saw the plaintiff as he came up to the engine and started to go west between it and the coal chute. As the engine was in plaintiff's way, he proceeded westward along the side of the engine, intending to pass between it and the coal chute, and, having gone around the engine, pass directly south to the repair track; but unfor-

tunately, in attempting to pass between the coal chute and the engine, the engine was started without warning, and plaintiff was caught between a projecting beam or sill of the coal chute and the bumping beam or projection on the front of the engine, and received the injuries of which he complains. The way which plaintiff took was a much-traveled one, and he had gone over it, as he said, as many as fifty times a day. Other employés had frequently passed through the same place, with engines in practically the same situation. A rule of the defendant company provided that " the engine bell must be rung when an engine is about to move."

The negligence charged is (1) the starting of the engine without giving any signals or warning that it was about to move; (2) failure of the engineer to look before starting his engine to see if plaintiff was out of danger; and (3) the willful wrong of the engineer in starting the engine without giving a signal or looking to see if plaintiff was out of danger. Defendant's answer was practically a general denial.

The trial court instructed as a matter of law that plaintiff's case came within the provisions of section 2071 of the Code, to which we shall hereafter refer, and also gave the following:

1. RAILROADS: negligence of co-employé; liability statute.

Another charge of negligence on the part of the defendant is that the engineer, before he started his engine, failed to look to see if plaintiff was in a place of danger, and, without looking, started his engine without giving any signal. Upon this branch of the case you are instructed that if the engineer of engine No. 7 knew that the employés were in the habit of passing between said engine and the coal chute while in the line of their duty as car repairers, and while going to and from their work, and if you further believe that said engineer knew or had reason to believe that plaintiff was between said engine and said coal chute at the time he started his engine, and with such knowledge started his engine without giving any signal or warning to plaintiff, then the defendant would be guilty of negligence in not looking to see whether or not plaintiff was in a place of danger before starting his engine without a signal; and you should so find.

These are complained of, and it is also contended that plaintiff was guilty of such negligence contributing to his injury that he cannot or should not recover. These are the ultimate points relied upon for a reversal, although they are presented in many ways and in different aspects.

. Section 2071 of the Code reads as follows: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employés, in consequence of the neglect of the agents or by any mismanagement of the engineers or other employés thereof, and in consequence of the willful wrongs, whether of omission or commission, of such agents, engineers or other employés, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed."

There is no doubt that plaintiff was injured by a moving engine; hence the wrong, if any there be, was connected with the use and operation of a railway. But it is contended that plaintiff's employment was not such as subjected him to the hazards peculiar to the use and operation of railways; in other words, that he did not belong to the class of employés intended to be protected by this statute. The mere fact that plaintiff was called a car repairer does not assist in any way in the solution of this question. The test is, does the duty of the employé, no matter what his designation, require him to perform services which expose him to the hazards peculiar to the business of operating a railway? If it does, he is entitled to the protection of the statute. *Pyne v. Railroad,* 54 Iowa, 223; *Williams v. Railroad,* 121 Iowa, 270. Accordingly it has been held that water carriers, snow shovelers, private detectives, mechanics in shops, car inspectors, clinker men, coach cleaners, track repairers, section hands, and other like employés, who from the nature of their employment or in the performance of their duties are exposed to the hazards of moving cars, are within the statute. See *Keatley v. Railroad,* 94 Iowa, 692; *Smith v. Railroad,*

78 Iowa, 584; *Pyne v. Railroad,* 54 Iowa, 223; *Pierce v. Railroad,* 73 Iowa, 140; *Canon v. Railroad,* 101 Iowa, 619; *Butler v. Railroad,* 87 Iowa, 206; *Jensen v. Railroad,* 115 Iowa, 405; *Frandsen v. Railroad,* 36 Iowa, 372; *Malone v. Railroad,* 65 Iowa, 417; *Haden v. Railroad,* 92 Iowa, 229; *Foley v. Railroad,* 64 Iowa, 644. In *Akeson v. Railroad,* 106 Iowa, 58, the cases prior to that time are fully reviewed, explained, and distinguished, and the true rule as then understood by the court adopted. It was held in that case that it is the employment at the time of the injury which must be looked to, rather than the employé's engagements at other times. The rule is well enough settled, and, if there be any difficulty with it, it is in the application thereof to the particular facts of the case.

In the instant case it should be conceded, we think, that when plaintiff was injured he was in a place which exposed him to the hazards of moving trains. Indeed, there is little or no room for argument on this proposition. But appellant contends that he was there for a purpose of his own, to-wit, to secure his tools, and was not then in its employ. This, we think, is an erroneous view of the situation. True it is that plaintiff was not at all times and during every hour in the day in defendant's employ. For instance, when he left defendant's premises and went to his own home, he was not, after leaving the premises, in defendant's employment in such a sense that, if he was thereafter injured by a train operated by defendant on some distant track, which he was crossing simply to reach his home, within the protection of the statute. But when, in the morning, he reached defendant's yards, reported to his foreman, and received his orders as to what to do, he was from that moment subject to the control and direction of the defendant, and was in its employ; and if, in performing the duty required of him, he was compelled to subject himself to the hazard of moving trains, he came within the purview of the statute quoted. That he was going to get his own tools, which were kept in

property belonging to the defendant, is not controlling. He had to keep these tools somewhere, and for convenience they were kept upon the defendant's premises, and in a place presumptively provided by it. In going to get these tools, under the circumstances disclosed by this record, he was as much in the performance of his duty to his employer as if he were then actually engaged in repairing cars. If defendant did not wish to subject him to the perils of moving trains, it should have provided some other place for the storage of tools. As it did not do so, but permitted the use of its coal shed for that purpose, the case is no different from what it would have been, had defendant constructed a tool shed at the place where the implements were kept, and had ordered its employé to deposit them there. If this had been done, and plaintiff, pursuant to directions from his foreman as to what to do, was compelled to expose himself to the peculiar hazards of railroading, we apprehend no one would claim that he was not entitled to protection under the statute. Plaintiff could not work without his tools, and it was as much his duty, after receiving his orders, to get them, as it was that he should use them; and, after coming upon defendant's premises and subjecting himself to the orders of his foreman, he was from that time on in the defendant's employ. The record is such as to convince us that plaintiff was in defendant's employ when he received his injuries, and that the wrong which brought them about, if there was one, was connected with the operation of the railway.

But it is argued that in no event was the court justified in instructing the jury as a matter of law that plaintiff had brought his case within the terms of this statute. Were there any dispute over the facts, doubtless this proposition would be true; but where, as here, the facts are undisputed, and the inferences which may be drawn therefrom such as that reasonable minds cannot differ with respect thereto, a trial court is justified in instructing the jury as to the effect if the testimony on a given point. *Kenosha v. Shedd,* 82

Iowa, 540; *Noble v. White,* 103 Iowa, 352; *Hall v. Manson,* 90 Iowa, 585. Ordinarily the character of an employment, and whether or not thereby the employé is brought within the provisions of the statute, are questions of fact for a jury, and not of law for the court. *Shroeder v. Railroad,* 41 Iowa, 348. But, where there is no dispute in the evidence upon these propositions, it is the right, as well as the duty, of the court, to instruct the jury as to whether or not the case comes within the statute. *McKenna v. Hoy,* 76 Iowa, 322; *Muir v. Miller,* 82 Iowa, 700.

II. Instruction No. 12, of which complaint is made, had reference to the duties of the engineer " after he knew or had reason to believe that plaintiff was between the engine and the coal chute," and it says that if, with such knowledge, he started his engine without giving any signal or warning, then defendant would be guilty of negligence. In view of the evidence as to the custom of employés at this particular place, the rules of the company with respect to the giving of signals, and as to the engineer's having seen plaintiff go in between the engine and the coal chute, there was no error here. *Orr v. Railroad,* 94 Iowa, 423; *Sutzin v. Railroad,* 95 Iowa, 304; *Barry v. Burlington,* 119 Iowa, 62. This instruction does not, as defendant contends, eliminate the question as to plaintiff's contributory negligence. Indeed, the next instruction clearly says that, even if the jury found defendant guilty of negligence under the twelfth instruction, nevertheless, if plaintiff by any negligence on his part contributed to bring about the injury, he could not recover. The instruction as a whole was not erroneous. Assuming that the jury found the facts to be as mooted in the instruction, there is no doubt that defendant was negligent.

*2. Negligence: instruction.*

III. Contributory negligence on the part of plaintiff is stoutly insisted upon. This was one of the grounds of defendant's motion for a directed verdict. As to this we do not feel justified in finding as a matter of law that plaintiff

was guilty of any such negligence as will bar him of recovery.

3. CONTRIBU-        If there had been no evidence tending to
TORY NEG-
LIGENCE.        show that the engineer saw plaintiff go between
his engine and the coal chute, and that plaintiff knew the
engineer saw him going into this dangerous place, we should
have an entirely different case. But it is apparent from
the record that so long as the engine remained stationary,
as plaintiff had the right to believe it would, there was no
danger in going between it and the coal chute. Plaintiff
said that he relied upon the engineer giving a signal before
starting his engine. If this had been given, he (plaintiff)
could easily have stepped aside and avoided the injury.
The rules of the company required such a signal, and with
these plaintiff was familiar, and he said that he relied upon
them in going into the place where he was injured. Had
the engineer obeyed them, the accident would not have hap-
pened. On either side of the projecting beam or sill of the
coal chute there was ample room for an employé to stand
while an engine passed. The danger zone was a very nar-
row one, and so long as the engine remained stationary
plaintiff was in a place of safety; but when he attempted to
get around this projecting beam the engine came unexpect-
edly upon him, and the bumper upon the front end thereof
pinioned him against the sill.

Appellant says that plaintiff should have gone around
the other end of the engine, passed under the water crane,
and thus avoided the danger. The trouble with this con-
tention is that plaintiff did not, so far as shown, know which
way it was proposed to move the engine. He did know
that under exactly similar conditions other employés, as well
as he, had frequently before that time taken the same course
that he did. He knew, also, that the engineer saw him going
in that direction, and he had the right to assume that the
engine would not be started without a signal. Under these
circumstances it was for the jury to say whether or not plain-
tiff was guilty of negligence in selecting the way he did.

Neither was entirely safe, unless the engineer did his duty. If he did comply with the rules, each was comparatively secure. Moreover, when plaintiff started to go to the repair track after having obtained his tools, another engine had come onto the coal track and was standing east of the water crane, so that, had he attempted to go to the rear of the engine which struck him, he would have had to pass between the two engines, which were close together, and thus subject himself to a peril from each. The case on this proposition was clearly for the jury. Of course, plaintiff's belief that he could go through between the engine and the chute is not controlling. His conduct must be judged from all the surrounding circumstances.

There is no error in the record, and the judgment must be, and it is, *affirmed*.