Peter Slaats, Appellant, v. Chicago, Milwaukee & St. Paul Railway Company.

Railways: FELLOW SERVANT RULE: STATUTE: USE AND OPERATION. The statute making a railway company liable for injury to an employee, the result of the mismanagement of other employees when the wrong is in any manner connected with the use and operation of the railway, has reference to the physical use and operation thereof; and the question for determination is whether the injury occured on or about the railway, or in the operation thereof. In this action plaintiff, a helper in defendant's machine shop, was injured while assisting in changing the wheels of an engine, as the same was slightly moved by another engine to facilitate the work, and it is held that the rails upon which the engine rested in the shop did not constitute a railway within the meaning of the statute, nor was the slight movement of the partially dismantled engine thereon a use and operation of the railway. Weaver, J., dissenting.

*Appeal from Dubuque District Court.*—Hon. Robert Bonson, Judge.

Saturday, December 17, 1910.

Action for damages resulted in a verdict being directed

for defendant, and judgment entered thereon. The plaintiff appeals.—*Affirmed.*

*Hurd, Lenehan & Kiesel,* for appellant.

*Glenn Brown* and *Cook, Hughes & Sutherland,* for appellee.

LADD, J.—A crew, consisting of two machinists and five helpers, was employed by defendant in stripping engines when brought into its machine shops for repair, and in replacing the parts when put in a state of repair. The plaintiff was one of the helpers, and his duty was to block the wheels of the engine when placed over the draw pit in the shop by putting wooden blocks or iron nuts or burrs under the wheel and removing these when the engine was ready to be taken away. This pit was in the shop with movable rails over it, these being connected with others extending to the turntable on the outside and then on with the main tracks of the railroad. When the wheels were to be put on an engine, it was "jacked up and rested on supports, the rails of the pit were then removed, and the wheels put in place. Then, for the purpose of putting in the second set of drivers, the track would be replaced and the engine would be removed so that the drivers which had been attached would rest on the permanent track beyond the pit, when the same plan would be followed for putting on the drivers, which has been described. . . . The engine, after the drive wheels were under it, was removed by another engine, but sometimes by pinch bars." On July 13, 1907, a switch engine was employed to remove that on which the wheels had been replaced. The repairs had not been completed, and, for this reason, two of the helpers sat on the frame holding up part of the machinery so it could move. After helping couple the live with the dead engine, plaintiff stepped back to see if the blocking

was out.  Noticing a small burr on the rail, he undertook to brush it out with his hand when, without warning, the engine started and his hand was so crushed that he lost three fingers.  The evidence was such as to carry the issue of absence of contributory negligence to the jury, and no question is raised but that the jury might have found that the injury was the direct consequence of the employee's negligence in failing to warn plaintiff before moving the engine.  As he was a coemployee of plaintiff, however, a finding for defendant was directed by the court, and the sole issue of law is whether the facts bring the case within the provisions of section 2071 of the Code.

As plaintiff's employment was such as to expose him to the dangers incident to the moving of the dead engine, and the negligence of the engineer, if any, was in starting the same without warning, it is evident that the determination of the question depends on whether the work being done was in any manner connected with the use and operation of the railroad.  The section of the statute referred to, in so far as pertinent to the inquiry, reads:  "Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of the agents or by any mismanagement of the engineers or other employees thereof, and in consequence of the willful wrongs, whether of commission or omission of such agents, engineers, or other employees when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed."

In a sense, everything such a corporation does is in some manner connected with the use and operation of its railway, for that is the purpose of its existence.  Thus the work of those who solicit freight or passengers for transportation or enter into traffic arrangements with other roads, or procure rolling stock or fuel for the engines and the like, is connected with the successful operation of the

enterprise, but no one pretends that work in any of these lines is within the purview of this statute. See *Malone v. Railway*, 61 Iowa, 326. It has reference, as we think, to the physical use and operation of the railway, and the question for determination is whether the accident occurred on or about a railway or in the operation thereof. The record leaves no doubt but that the engines were in the machine shop, as distinguished from a roundhouse. Into the latter, engines in service are run for repair and cleaning necessary to their continued use on the road. Roundhouses are constructed along the way for this purpose, and are made use of in connection with the actual use of the road. Their relation thereto is somewhat like the stable to the livery. But the machine shops are the hospitals. The engines, cars, and the like are only taken there when disabled and withdrawn from use when this is essential to refit them for actual service in the operation of the railway. Manifestly, when so withdrawn and in course of reconstruction or repair, they are in no wise connected with the operation of the railway. As well say the steam shovels, pile drivers, and the like being repaired in the same shop are so connected. Such reconstruction and repair might proceed as well were the shop that of an individual or other corporation and located apart from the railroad. Over the shop in question the operating department of the railroad exercised no control. Tracks were laid on the floor, and on these the engines and cars were stripped, and so, too, the different parts were assembled and put together, and the engines or car moved about thereon during repair or construction. These tracks were connected with those in the yard and then with the railway, but does this make the tracks in the shop a part of the railroad in the sense in which that word is employed in section 2071? If so, then the tracks in a manufacturing plant on which locomotives are constructed by individuals or corporations other than railways constitute railroads, and

employees working thereon are within the protection of the above section. The mere laying of tracks on the floor does not make a railway, nor does the movement of an engine or car thereon necessarily constitute the operation of a railway. If so, this might be effected by the use of a pinch bar or a moving crane or any kind of electric device. A company or individual, engaged solely in manufacturing or repairing, might make such use of tracks entirely within the plant in the convenient performance of its work and without connection with a railroad, as that term is understood. Of course, a company or individual may operate a railway solely for the purpose of carrying property belonging to it or him and such an one has been held to be within the terms of similar statutes. *Lodwick Lumber Co. v. Taylor,* 39 Tex. Civ. App. 302 (87 S. W. 358); *Schus v. Powers-Simpson Co.,* 85 Minn. 447 (89 N. W. 68, 69 L. R. A. 887); *Kline v. Minnesota Iron Co.,* 93 Minn. 63 (100 N. W. 681); *Kibe v. Stevenson Iron Co.,* 136 Fed. 147 (69 C. C. A. 145); *Hines v. Stanley G. I. Electric Co.,* 199 Mass. 522 (85 N. E. 851); *Cunningham v. Neal,* 49 Tex. Civ. App. 613 (109 S. W. 455); Id., 101 Tex. 338 (107 S. W. 539, 15 L. R. A. [N. S.] 479). See *Mace v. H. A. Boedker & Co.,* 127 Iowa, 721.

But we have discovered no decision to the effect that a railroad is operated save when in use for the transportation of freight of some kind or passengers or both. Such is the use of all railways, and, when not so employed, they are not in use. It is the use the rails are put to and not the form of rails which determines whether they constitute a railway. The mere moving of the dismantled engine which had been withdrawn from service and sent to the hospital for remedy by the live engine was neither connected with the use nor the operation of the railway, but was in the preparation for use in that connection. The work of these shops may as well have been carried

on apart from the defendant and without interfering with the operation of its road. The elimination of the fellow servant rule effected by this statute repeatedly has been justified against the the charge of discrimination on the ground that the hazards of the employment are peculiar to railroading. *Akeson v. Railway,* 106 Iowa, 54. These hazards are not only from the nature of the work in movement of vehicles and machinery of great weight and velocity by steam on tracks, but because of the coemployees being widely separated and not in a situation directly to influence the actions of one another. The hazard in performing other work may be quite as great but is of a different kind, and, on this ground, the classification has been upheld and the legislative intent declared. Other courts may have interpreted similar statutes more broadly, and possibly in doing so correctly expressed the designs of the respective Legislatures in enacting them. See *Chicago, R. I. & P. Ry. v. Stahley,* 62 Fed. 363 (11 C. C. A. 88) ; dissenting opinion in *Dunn v. Ry.,* 130 Iowa, 580. But this court, since *Deppe v. Railway,* 36 Iowa, 52, has adhered to the proposition that the General Assembly, in framing the several statutes, did not purpose to afford protection to railroad employees not extended to others in like situation. "The purpose of the lawmakers," as said in the *Akeson* case, was "evidently not to make men because employed by railroad companies, favorites of the law, but to afford protection owing to the peculiar hazards of their situation." In what way do the hazards of work in a railroad machine shop differ from those incident to employment in other shops where heavy machinery is handled? None whatever. The machine shop is not recognized in title X of the Code treating of railroads as an essential part thereof. No one will pretend that chapter 4 thereof authorizes the condemnation of land on which to erect such shops and every section of chapter 5, of which section 2071 is a part, emphasizes the thought that by the word "railway"

as employed therein is meant all those facilities made use of in the movement of trains, cars, vehicles, and the like on the track constructed for the carriage of freight and passengers. In many decisions, this court has declared that by "operation" of a railway is meant the movement of engines, cars, and machinery on the tracks, and, to be within the protection of the statute, the wrong must be in such movement or connected therewith. *Akeson v. Ry., supra; Stroble v. Ry.,* 70 Iowa, 560; *Smith v. Ry.,* 78 Iowa, 583; *Larson v. Ry.,* 91 Iowa, 81; *Foley v. Ry.,* 64 Iowa, 644; *Reddington v. Ry.,* 108 Iowa, 96; *Dunn v. Ry.,* 130 Iowa, 580. In the first case it was said that if "the injury is received by an employee whose work exposes him, to the hazard of moving trains, cars, engines, or machinery on the track, and is caused by the negligence of a coemployee in the actual movement thereof, or in any manner directly connected therewith, the statute applies, and recovery may be had. Beyond this, the statute affords no protection."

We are of opinion that the rails on the shop floor did not constitute a railway within the meaning of the statute, nor was the movement of the dismantled engine on the rails therein by the live engine the use and operation of a railway. See *Perry v. Ry.,* 164 Mass. 296 (41 N. E. 289); *Potter v. Ry.,* 46 Iowa, 399; *Hathaway v. Ry.,* 92 Iowa, 337.

The ruling of the district court is approved, and its judgment is *affirmed.*

WEAVER, J. (dissenting).—In my judgment the majority opinion draws a distinction which can not be logically maintained, and reaches a result not to be reconciled with our own holdings in numerous cases. It concedes the sufficiency of the showing to sustain the charge of negligence and the want of contributory negligence, and disposes of the appeal on the sole ground that said negligence was

not "in any manner connected with the use and operation of the railway," and is not therefore within the statutory exception to the rule which relieves the employer from liability for injuries resulting to a servant from the negligence of a fellow servant. The statute it will be observed protects the servant not merely against injury arising from the movement of trains while transporting passengers and freights, but against the consequence of any negligence by any agent or employee of the company when that negligence is "in any manner connected with the use and operation of the railway." I shall not wrestle with the impossible task of reconciling all the decisions of this court in the construction and application of the statute in question. With apparent obliviousness to the unequivocal language of the act there was for a time a visible tendency to hold that to be entitled to its benefits, the injured person must not only be able to trace his hurts directly to negligence in the actual movement of a train or car, but he must also show that at the time of his injury he was himself employed in some labor connected with the actual operation of the railway. Such manifest misconstruction could not long be justified, and it has to a great extent been tacitly abandoned or expressly disapproved. Stated in brief terms, the tendency of the greater number of our more recent holdings is to the effect that the negligence of any employee in the performance of any duty directly affecting the safety of others engaged in the operation of the road, or in any labor of any kind which directly exposes them to the hazards attending such operations is negligence "connected with the operation of a railway" within the meaning of the statute.

For instance, we have held that the work of an employee charged with the repair of a bridge (*Locke v. R. R. Co.*, 46 Iowa, 113); of a coal shoveler in loading a standing engine (*Akeson v. R. R. Co.*, 106 Iowa, 54); of an employee controlling the operation of a ditching

car *(Nelson v. R. R. Co.,* 73 Iowa, 576); of a shoveler
loading cars from a gravel pit *(Deppe v. R. R. Co.,* 36
Iowa, 52; *McKnight v. R. R. Co.,* 43 Iowa, 406); of
sectionmen removing a handcar from the track *(Frandsen
v. R. R. Co.,* 36 Iowa, 372; *Cahill v. R. R. Co.,* 148
Iowa, 241); of a section foreman in repairing the track
*(Haden v. R. R. Co.,* 92 Iowa, 226); of a car inspector
inspecting a standing train *(Canon v. R. R. Co.,* 101
Iowa, 613); of a car repairer in the railway yards *(Hughes
v. R. R. Co.,* 128 Iowa, 211); of a water carrier for a
bridge crew *(Keatley v. R. R. Co.,* 94 Iowa, 685); of a
car cleaner working on a car standing on a side track *(Jensen
v. R. R. Co.,* 115 Iowa, 404); of a shophand repair-
ing the window of a car standing at a station platform
*(Pierce v. R. R. Co.,* 73 Iowa, 140); of a switchman upon
a temporary or dummy track used in construction work
by a contractor *(Mace v. Boedker,* 127 Iowa, 721)—is
"connected with the operation of a railway" in the statu-
tory sense of that phrase.

Even in this case the majority opinion seems to con-
cede that if the engine had been undergoing repairs in a
roundhouse instead of the company's shop a different rule
might apply. In short, it may be stated as the recognized
general rule that wherever the employee may be and what-
ever may be the nature of his work if he is thereby ex-
posed to the hazards peculiar to or attendant upon the
operation of a railway he is within the protection of the
statute. Bearing this definition in mind the fallacy per-
vading the majority opinion is clearly apparent. It crops
out noticeably in the suggestion that a literal interpreta-
tion of the statute might be made to cover the case of
an agent or employee who solicits freight or passengers for
his road. Such service has no more connection with the
operation of a railroad than has the service of the job
printer who supplies its advertising matter. What is meant
by the words "in any manner connected with the operation

of a railway" is neither ambiguous, obscure, nor difficult of application until the court itself creates clouds and uncertainty by making finely drawn distinctions. A railroad is "operated" not alone in the direct physical act of hauling freight and passengers over its main line from station to station, but as well in every movement of its rolling stock of any kind over any part of its system of tracks auxiliary thereto, and negligence in such movements is negligence connected with the operation of the road without regard to the special function of the particular track on which it occurs. It is a matter of common observation that the transportation business of a railroad calls into existence at every station of importance a network of tracks. Some are used for storage; others extend to and into grain elevators, stock pens, factories, and industrial establishments of every kind. Others still reach into the company's roundhouses and shops. That the use of these tracks is connected with and part of the operation of the road would seem to be too clear to call for argument or demonstration. Not all work of car repairing is done in the shops. Much of it, especially that of a minor character, is done while the cars stand in the open on a side track designated for that purpose. If a mechanic while at work upon a car standing upon the repair track in the company's yard is injured by the negligence of an engineer in suddenly moving such car without warning, or by bringing his engine into collision with it, no one could reasonably contend that such want of care was not connected with the use or operation of the railway. If the convenience of the company or the facilitation of the work of repair requires a movement of the car undergoing repair from one location on the repair track to another, and an engine is used for that purpose pushing or pulling the car to the desired position why is not such work a part of the use and operation of the road?

We have held that the act of pulling a cable which

operates a loading or unloading device is an operation within the statute. *Stebbens v. R. R. Co.*, 116 Iowa, 513; *Williams v. R. R. Co.*, 121 Iowa, 270. The same has been held as to the operation of a ditching machine by locomotive power. If such movements of a locomotive fall within the definition of "use and operation" as used in the statute, the necessity and propriety of such classification would be in no wise affected if the company should cover its repair track with a roof and inclose it with walls in which gates or doors are provided for the entrance and exit of cars. Yet we should be compelled to draw that distinction if the reasoning adopted by the majority in this case is to prevail. If an engine becomes disabled upon the main track, we may assume that the company would dispatch another to take it in tow, haul it to the station where repairs are to be made, thence out through the yards to the shop track, and thence to its proper location within the shop—one continuous transportation or haul, and moved every foot of the way by the company's own motive power over its own track. When the progress of repair requires the great machine to be moved from one room to another, or from one location in the same room to another, again the live engine is called to move it from place to place over tracks constructed for that purpose. When the work is complete, once more the other engine appears and hauls its fellow out over the same system of tracks to receive coal and water and resume active service. In thus transporting its dead engine from the place of the accident to its shop the company was assuredly using and operating its road. If so, then when and where in any of the movements to which that engine was subjected did that use cease? It was in every stage of its progress upon the company's tracks, which constitute an important part and parcel of its track system. It was at every stage a part of the company's rolling stock moved about upon the company's tracks and by the company's motive power. True,

it was not at the time being used for hauling passengers or articles of commerce, and neither is the lone engine which makes its way to the water tank, coalshed or cinder pit in preparation for such service, yet in each instance the movement is a part of the use for which the railway is constructed. In other words, a very important part of the use and operation of the road consists in aiding and facilitating its own repair and the upkeep and renewal of its rolling track. I respectfully insist that the majority opinion does not answer the appellant's contention when it says that repairs such as were here being made could have as well been done in the shop of some individual or independent corporation. It is a sufficient reply that these repairs were not being so made. If an individual or corporation operating an independent car or repair shop shall build an establishment and undertake work of such magnitude as to justify the construction of railroad tracks over which it moves its products from place to place I can conceive of no reason why it should be exempted from liability under the statute. *Mace v. Boedker,* 127 Iowa, 721; *McKnight v. Construction Co.,* 43 Iowa, 406; *Schus v. Powers,* 85 Minn. 447 (89 N. W. 68, 69 L. R. A. 887).

The operation of the statute here in question is not limited to railroad corporations or to railroads doing business as common carriers. In any event, if a railroad corporation sees fit not to send its cars and engines to an independent shop, but builds its own in connection with and as a part of its own system, and extends its tracks into and through the shop buildings, and over these tracks operates its locomotives, it strikes me as being a very strained interpretation of the statute which draws the line of its protection at the shop door, and says to the servant engaged in hauling a disabled engine he may cross the threshold and complete his trip only at the price of assuming all risk of injury from the negligence of his fellow-servants. Doubtless the majority does not want to be

understood literally when it says that no case is to be found that holds that a railroad is "operated" only "when in use for the transportation of freight or passengers." It is true, of course, that such is the primary and principal business for which the ordinary commercial railroad is intended, but there is a great variety of ways in which it may be and is operated otherwise than in handling freight or passengers.   If the movement of unattached engines, the hauling of wrecking cars, pay cars, pile drivers, and disabled engines, the use of devices for loading and unloading cars by locomotive power and other methods by which such power is utilized in the company's own service are not a part of the use and operation of the railway, and have no connection therewith, then we should at once clarify the situation by overruling a dozen or more of our well-established precedents.   In *Stebbins v. R. R. Co.,* 116 Iowa, 515, where negligence in pulling a cable operating a loading device was held to be within the statute, this court said:   "It is argued by counsel for appellant that inasmuch as this loading of rails had no connection with the operation of any train and might have been accomplished by means of power furnished by a stationary engine or from any other source as well as by the use of a locomotive engine on the track, the act was not so connected with the operaion of a railroad as to be within the statute.   But the statute is not limited in its application to the employees who are immediately connected with the operation of trains.   The plaintiff in this case was engaging in transferring rails from one car to another by the use of a locomotive engine moving on the railroad track. The engine was furnishing the motive power to draw the rails from one car to another, and we think this was a part of the hazardous business of operating a railroad. The danger was not necessarily the same as it would have been had the power used been a stationary engine or a horse.   *The operation involved the use of heavy machinery*

*and the great power of a locomotive engine."* The language here quoted is singularly apt in its application to the circumstances with which we are now dealing. In the *Akeson* case, above cited, the servant was not injured by the movement of any car or engine, but by the negligence of a fellow servant in moving a plank resting on the tender of a standing engine. Neither of them had any direct part in the train service, and the engine about which they were at work was not at the time hauling passengers or freight, and yet the court sustained a recovery of damages, saying: "The use and operation of a railroad does not consist in the movement of trains alone." In *Pyne v. R. R. Co.,* 54 Iowa, 223, it was held that whatever the employee's business may have been if it brings him within the hazard peculiar to the business of using and operating a railroad, and while in the line of duty the negligence of a coemployee causes him to receive "an injury from a passing train or from any other appliances used in the use and operation of the road, he may recover." In *Jensen v. R. R. Co.,* 115 Iowa, 406, referring to some of our earlier cases we said: "Language has been employed which standing alone and literally construed might seem to imply that no employee unless he be a trainman, and no injury except such as is received in the movement of trains, is contemplated by the statute. This interpretation we have in numerous cases held to be entirely too narrow." To the same effect many others of our decisions might be cited, but I will not further prolong this dissent to quote therefrom. The case of *Potter v. R. R. Co.,* 46 Iowa, 399, so largely relied upon by the appellee, is not in point either in fact or principle. It is true the injury there complained of occurred in a railway shop, but there was no claim or pretense that it was occasioned by any negligence in the movement or operation of a locomotive or other act having to do with the use and operation of the road.

I wish to further suggest that whether a given act or circumstance is "in any manner connected with the operation of a railway" is a question of fact for the jury, and not of law for the court. *Schroeder v. R. R. Co.,* 41 Iowa, 344; *Hughes v. R. R. Co.,* 128 Iowa, 214.

While the facts before us are involved in little if any dispute, they are such the court can not properly say that reasonable minds may not differ in the inferences to be drawn therefrom, and for this reason also the plaintiff should have been permitted to go to the jury.

In my opinion, the judgment below should be reversed.